James Mieeer, one of the appfellees,' obtained a judgment for six hundred dollars and upwards, against Samuel Stevenson, one of the appellantss and issued execution of fieri facias, which was returned “No property found.” He then filed a bill against Stevenson, alleging that a negro woman1 slave and her children, had been sold as the property of Stevenson, under an execution against him in favor of Reuben Newton, for $¿8.5 73 cents more than Newton’s debt j that Richard A. Taylor becamé:the purchaser, and gave bond and security for the said overplus, beyond Newton’s debt, which was still due to Stevenson; that John B. F. M’Gee and John Perceful had executed to said Stevenson and Charles HéJm> bis partner, their three several obligations for the payment, in the whole, of $4,994 5¿, the greater, part of which was still due — the one half of which, belonged, of right, to said Stevenson, as the partner of M*Gee j but that said Helm, being in possession of said notes as partner, with the fraudulent intention of .defrauding the creditors of said Stevenson, had assigned one of said notes to Achille.s Sneed, to the amount of $1,664 84, and that Sneed had refused to accept the assignment, as he was informed : That said Helm had also assigned another of said' notes to Askew and Paxon, merchants of Philadelphia, for the same fraudulent purpose, there being nothing due to them; and that they had commenced and were prosecuting suit thereon, to judgment. He then prayed that said Stevenson, the said Taylor and John B. F. M’Gee, his security in the bond for the payment of the residue of the prifce of the aforesaid slave and her children, and the said Perceful and M’Gee, who had executed the aforesaid notes, and Sneed, and Askew and Paxon, to whom two of them were assigned, might be made defendants ; and that an injunction might be granted, “ enjoining the said Taylor and M’Gee from paying unto the defendant, Stevenson, the residue of the price of said slave and her children j that M’Gee and Perceful be enjoined *308 from paying to the aforesaid Achilles Sneed, as we 11 'as., the said Askew and Paxon be enjoined from proceeding and collecting the siim due to them on their 'note, or two notes, on which they had obtained judgment j’* and that several defats, or so much of them as belonged to said Stevenson, and as would be sufficient to satisfy his demand, might be appropriated in discharge thereof, by a decree of the court.
His bill was sworn to, and an order obtained thereon. dated, on the 19th November 18i8, signed by Christopher Miller, George Helm and Samuel Martin, wfao subscribe themselves “ as justices of the peace for the county, duly appointed by the county court of said county to award injunctions, &c.” under the. act of assembly in such cases provided, directing the clerk of the circuit court of the same county, to issue an injunction thereon against the defendants, “ agreeably to the prayer of the bill, on the complainant’s entering into bond, in the clerk’s office of said court, with Jacob Strigler and William Purcell as his securities, in the penalty of thirteen hundred dollars, conditioned as the taw directs.”
On filing this bill, the complainant therein and his securities, executed bond in the clerk’s office, in the. penalty directed, reciting the circumstances, and conditioned that Miller and his securities, or either of them, “ should satisfy and pay all sums of money and costs, which were then due to said Stevenson, Sneed, M’Gee, Taylor, Perceful, Askew and Paxón, and C. Heiip,; and also, all costs anddamag.es that should be. awarded against the said James Miller, in case the injunction aforesaid should be dissolved.”
The injunction issued as granted, and at a subsequent term of the circuit court, before any answer was filed, on the appearance of the parties, it was decreed and ordered by the court, “that the complainant’s bill be dismissed, and the injunction discharged,-and that the defendants recover against the complainant, their costs by them about their defence therein expended.”
Stevenson, Sneed, John B. F. M’Gee, Taylor, Percefnl. and Askew and Paxon, and Charles Helm, obli. gees in the injunction bond, then brought this action ,of covenant on the injunction bond ; and after reciting the bond, and averring the dissolution of the injunction, as before detailed, assigned for breach, that the *309 ^obligors ¡Failed to pay the amount (if the 'judgments of Askew and Paxon, in the circuit cifftrt, against M’Gee and Percefui, with interest and-.costs; also the costs and damages awarded the plaih tiffs on the discharge of the injunction. *
After oyeh was craved and granted, both of the injunction bond and the proceedings of the chancery suit, sundry pleas were filed, all of which were withdrawn and disposed of, except 'the-fifth, which alleges ** that at the April term. 1818, of the county court of Hardin, the said court appointed the said George Helm, Christopher Miller and Samm I Mttrtin. justices of the peace for said county, to grant injunctions, &c. of a copy of which order proferí is made; arid that at the . next October following, the said county court laid their levy, and that court was their court of claims ; that the' said court then failed to re.appoint the said justices to the same office ; and that after the failure and refusal of the county court to re-appoint the said justices, and after their power's to grant injunctions ceased, they granted and awarded the injunction referred to in this suit; and that the’circuit court thereafter discharged the said injunction, because the said justices had no power or jurisdiction to grant such order and injunction, and because the clerk had improvidently endorsed said injunction upon the subpoena, when none, in truth and fact, was granted.”
To this the plaintiff below replied, “ that at the April term 1818, of the said county court, said court did appoint said justices, who acted as such; and that at the October term following, that court made no order on the subject; and that at the date Of'the granting of the injunction aforesaid, the defendant, Miller, produced and made oath to his bill, and moved the said justices to grant him the injunction, upon the allegations therein made; which motion they granted, at his instance, according to the order written upon said bill; and that the said Miller produced said bill to the clerk, and order thereon, and upon complying with the condition of said order, by giving of the bond, with security, declared on, demanded of the said clerk the injunction, and caused it to be issued and served on the sheriff in whose hands the executions of Askew and Paxon were for collection ;, .and the sheriff, in obedience thereto, returned-said executions, as *310 enjoined, whereby the collection thereof was restrained and delayed, until, at the January term 1820, of the Hardin circuit court, having jurisdiction thereof, the court dismissed the bill, and discharged the injunction, and awarded that the defendants in that court have the benefit of their iudarmentat law.”
If a com-_ plainant in chancery obtain avoid injunction, and by so doing, subjects those against whom it is obtained to vexation and expense, the bond which he executed in order to obtain it is not void in consequence of the injunction’s being void.
The defen tdant in a suit on aft injunction bond where the injunction has been awarded by justices of the peace, on his application, may be estopped . to deny the authority of-the justice--, at the time to award the injunction.
But to make the estoppel operate, it is necessary for the plaintiff to rely on it by demurrer to the plea denying the authority of the justicess or to reply the order awarding the injunction,
*310 To this replication there was a demurrer, and the court sustained the demurrer and gave judgment tor the defendant 3 to reverse which, is the object of this anneal.
2 This is a case of Some novel tv, and has arisen from conferring, for the convenience of the people, authoiily upon justices of the peace, who cannot generally be presumed to be acquainted with the principles and rules of courts of equity, to. grant injunctions. This injunction is one of an extraordinary character, and ought never to have existed.; but, to decide upon the propriety of granting it at all, is not now so fully presented for our consideration, as are the consequences that must result from it.
It is contended, that the iustices of the peace, in this instance, had no power to grant the injunction, and therefore the bond is void, and no recovery can be had thereon.
Were it conceded, that this is to b.e. treated as no injunction, it would not necessarily filiow, that thp bond was void. The injunction was procured by the appellees, ami the bond executed, without the agency or consent of the obligees, and has had all the consequences of delay that a valid injunction could have had, and may have subjected the opposite party to as great injury, which would form a consideration sufficiently valid to. sustain the bond. We know of no statute, and are aware of no principle of the common law, vpIh/'Ii rlorrlai»í»c snrh a Knur! vryM. TPIiaha is nr* rp.asnn. then, why it should not be held valid at common law*
3.. Ir has been contended, that tiie appellees were estopped to question the authority or these-justices to grant this injunction. To this it may be replied, that to make an estoppel operate, it is necessary for the party who would avail himself of it, to rely upon the estoppel. Had he,.in this instance, demurred to the plea, or replied the order granting the injunction, without expressly admitting that the county court of Hardin did not. at their court of claims, continue the. . *311 appointment of these justices, we. SHiouhJ have no hesi. tation in saying, that there wás‘ áti estoppel; but as this fact, which is alleged in the. plea, is'admitted in the replication, the case presents'more difficulty ; for if the case was to turn exclusively on this point, we could not hesitate to decide, lhat.the power first con ferred on these justices, at their first appointment, ex pired at the next succeeding court of claims. The act directs, that “the several'county courts should, respectively, at their first meeting after the act took effect, or as soon thereafter as practicable, designate and select three of the most experienced of their own body, to exercise this duty, and should make an entry on their respective records, of the,persons by them so designated and selected; and that they shall, at the terms at which their respective levies are laid, in every year, renew and enter as aforesaid their selection, subject to such variation in the perspns designated, as the free choice of the court may occasion”—2 Dig. L. K. 7 07. To this act no other construction can be given, than that the appointment conferred was to be limited, and might be rotary, and that there was a ne cessitv to renew it.
rhe powers of the justices appointed <mder the act of 1818, to award injunctions, &c expirefl at the next succeeding court of claims.
Yet an injunction awarded by them aitei* the expiration of their authority was not void, bat was an injunction defacto. ■ 1
4. But if this is conceded, ought this to he treated as ■ no injunction ? We conceive not'.. The appellants, in; their replication, notwithstanding this admission, have^ shown that these justices claimed and exercised this, authority by colour of appointment, and. that, being 1 part of that body out of whom grantors of injunctions were to be taken, and having received an appoint.! ment, which was not substituted or superseded by the proper authority, they were grantors of injunctions tie facto; and this Is sufficient to make their acts valid, whenever they may come into question collaterally, and the rights of third persons hang upon their proceedings; for it is an established rule, that the acts of such persons are valid, when they concern the public, or the rights of third persons who have an interest in the act done; and the limitation to the rule, is as to such acts as are arbitrary and voluntary, and do not affect the public good. This is established by the case of the People vs. Collins, 7 John. 549, cited at the bar, and the cases there cited. If this rule applies in any case, it ought in the present, where-the procurement of the acts of these justices was enfirelv the act of the *312 party who now tries to avoid it. He mdant to stop» the progress of law, and subject his adversáries to the costs and expenre of a suit, by this proceeding. Before he could do this, he was hound by the direction of the justices, to do an act for the benefit of, and to secure his adversary. This he did, and now he attempts, after having effected his purpose, to tell his adversary it was all á sham. He has reaped the benefit of the acts done for his own use. but the opposite side is precluded from making him responsible, because he himself had gotten his injunclion from persons who had no authority to grant it. The admission of such a plea, may have more extensive evil consequences, than at first blush can be seen ; and it was, therefore, erroneous to sustain the demurrer for this cause, in the court below.-
Where an in junction is awarded to enjoin a judgment at law, a direction that the bond shall be conditioned according to law is-suffi cient, but in all other cases, the chancellor ought to direct the condition of the bond particularly.
There is, however, another objection to this bond, to which we will now pay some attention, although it has not been relied upon in argument.
5. The order granting this injunction is vague and indefinite, as to the kind of bond which was tobe taken by the clerk, before he issued the injunction. He was to enter into bond, •* as the law directs.” Now, where injunctions are granted in favor of defendants, to enjoin a judgment at law obtained againt them, an act of assembly directs that such bonds shall be conditioned, to pay all the costs and damages which may be' awarded, in case the injunction shall be dissolved. Such is the pattern furnished by the law for these bonds, and a direction to take them, in such cases, “as the law directs,” is sufficiently explicit. But when the chancellor grants injunctions and restraining orders, in other cases, the law furnishes no model, and the order itself ought to direct what kind of a bond should be taken. Such orders are various, and various directions may be necessary, as to the bond, to suit the nature of each case. Hence, no general law can well be adopted, to control the condition of the bond. Here the applicant prayed for an injunction of a singular character. The persons against whom it was to operate, had no judgment against him. He owed them nothing. On the contrary, one of them was in. debtedtohim, and his object was, to tie up the hands of others from collecting their debts, until he collected his, out of .the debts due from one individual of the *313 opposite party to another. In all such anomalous cases, the officer or court granting the injunction ought to prescribe what kind of bond should be taken by the clerk, and such order-is imperfect without it. It may, therefore, be urged, that as the,clerk was left to dictate the bond, and that, as.it was one of his mak. ing- without explicit directions, it cannot be good. This conclusion cannot, however, follow from the premises assumed. I'he bond might still be good, as an instrument at common la w.* The party giving it, was bound to see what he executed. If, by the mutual mistake of himself and the clerk, he executed a bond for too exorbitant an amount, if he couldmot reach it by a plea at common law, he might be relieved from iKn a court of equity. We should not, therefore, be disposed, for this cause, under this state of the pleadings, to pronounce this bond void.
This objection may, however, receive another answer, still more satisfactory. The clerk was, by the order, to take a bond of some character. Less than the costs, ought not to be included in all such bonds; and if any general rule does apply to, bonds taken on granting unusual restraining orders and not on judgments at law, it is, that they ought to secure the costs of the chancery suit to the opposite party. Such a bond, nearer than any other, in such cases, may be said to be a bond “ as the law directs.”
Has the clerk, then, taken this bond for more than the costs of the chancery suit, nrthis instance ? We conceive not. True, the bond binds the obligors to “satisfy and pay all sums of money, and costs, which were then due” to the several defendants. What sums, or costs, were due to them, and from whom ? He owed them not a cent; and it is what he owed them which can be included ; for, certainly,, the court cannot adopt the absurd construction, that he bound him. self to pay the defendant, Stevenson, what Stevenson owed him ; or that he bound himself to both debtors and creditors, among the several defendants, to pay the debts due to each other and pay the debtors them selves what they owed to their creditors. . This would be too preposterous, and cannot bé intended*. This condition is nothing more, than an unskilful attempt of the clerk, to mould the bond into the shape of a-bond given by a judgment debtor'to his cred. *314 itoi’, winch did' not fit the case then on hand. The bond also binds him to pay all damages that should be awarded in case the injunction should be dissolved. Now, no damages could be awarded on the dissolution of the injunction, and none were awarded. This stipulation is, therefore, inoperative and harmless.
The costs, then, of the chancery suit, which might thereafter be awarded, and which were consequently given on the dissolution of the injunction, is the only stipulation that applies to the case, and the only one that can be operative against thfe appellees ; and for this alone can the plaintiffs below sustain their action. We observe that the plaintiffs below have treated this bond otherwise, and have higher prospects from its different stipulations. They have assigned for breach, that the obligors failed to pay the amount of the judgments and costs of Askew and Paxon against M’Gee and Perceful, which are large sums. But this breach is not good; and for it, if one bad breach would vitiate such a declaration on demurrer, this demurrer would be sustained. But the rule on demurrer is otherwise. One good breach may sustain a declaration, and if the verdict or inquest of damages is found specially on that breach, it may be sustained, though a general verdict, in such case, cannot. As there is, then, a good breach assigned for non-payment of the costs., the demurrer must still be overruled.
Upon the whole case, then, we are of opinion that this bond is not void, as was decided by the court.below, and that it is a good bond for the costs only.
The judgment of the court below must, therefore, be reversed with costs, and the cause remanded, with directions to that court to overrule the demurrer to the replication, and for such other proceedings as may not be inconsistent with this opinion.