# CHARLESTON.

STATE FOR USE OF JOHNSON *v.* JOHNSON *et al.*

Submitted February 2, 1886.—Decided March 27, 1886.

A judge or court cannot require of a personal representative a bond on awarding him an injunction to a judgment or decree against him as such personal representative; and if such bond is taken by the clerk before the injunction awarded is allowed to take effect, such bond is void both as a statutory bond and as a common law bond, it being contrary to public policy to require such bond.

*T. P. Jacobs* for plaintiff in error.

*R. W. McEldowney* for defendant in error.

Statement of the case by GREEN, JUDGE:

On November 10, 1884, Jehu Johnson brought an action of debt against Horatio N. Johnson and Albert Calvert and John C. McEldowney in the circuit court of Wetzel county on an injunction-bond in the penalty of $1,400.00 executed by the defendants. The declaration was filed at December rules, 1884, and is as follows :

" The State of West Virginia, which sues for the use and benefit of Jehu Johnson and at his instance and costs, plaintiff, complains of Horatio N. Johnson, Albert G. Calvert and John C. McEldowney, defendants, of a plea that they render to said plaintiff the sum of $1,400.00, which they owe to said plaintiff and from him unjustly detain and thereupon the said plaintiff saith that heretofore, to wit, on the first day of August, 1882, at said county, the said defendants, by their certain writing obligatory, sealed with their seals and now here to the court shown, the date whereof is the same day and year aforesaid, acknowledged themselves held and firmly bound unto said plaintiff in the penal sum of $1,400.00, to the payment whereof they bound themselves jointly and severally, firmly by said writing obligatory, to which writing obligatory there is a condition to the following effect, to wit, that whereas an injunction had been granted by the judge of the circuit court of Wetzel county enjoining

and restraining Jehu Johnson from collecting the amount of a certain judgment in his favor and against said Horatio N. Johnson and Albert G. Calvert as the executors of O. P. Johnson, deceased, for the sum of $674.70 and interest and costs, the same having been rendered at the May term, 1882, of said court, and bond being required by the said order of injunction, if therefore the said Horatio N. Johnson and A. G. Calvert, executors as aforesaid, should pay any judgment or decree which might be awarded or entered against them in said proceedings, and all costs and damages which should be awarded against them by said court, and also such damages as should be incurred or sustained by said Jehu Johnson in case said injunction should be dissolved, then said writing obligatory to be void, otherwise to remain in full force. And said plaintiff in fact says that afterwards, to wit, at a circuit court for the said county of Wetzel, held on September 23, 1884, the said circuit court did adjudge, order and decree that the injunction aforesaid be dissolved, and that said Horatio N. Johnson and A. J. Calvert, executors as aforesaid, and from the funds in their hands as such, should pay to the said Jehu Johnson the sum of $896.06, with interest thereon from said late named date, being the aggregate of the principal of the judgment at law in the bill and proceedings mentioned which was enjoined, with legal interest thereon from May 22, 1882, the date of the said judgment, to August 1, 1882, the date when said injuction took effect, and the cost thereof, being $716.94 and $152.12 damages in lieu of interest at the rate of ten *per centum per annum* from that date, the time when said injunction took effect, being in the aggregate $869.06 as aforesaid, with interest on said sum from said September 23, 1884, until paid, and that the said Hortaio N. Johnson and A. G. Calvert, executors as aforesaid, pay unto the said Jehu Johnson the costs by the said Jehu Johnson in the said circuit court expended. And said plaintiff says that said costs in said circuit court expended amount to $43.85, and that the damages to which it is entitled at the rate of ten *per centum per annum* from the time the said injunction took effect until said dissolution on the sum of $716.94 appearing to be due, including the costs recovered at law, amount to a large sum of money, to wit,

the sum of $152.12. And said plaintiff avers that although said injunction has been dissolved as aforesaid, yet the said Horatio N. Johnson and A. G. Calvert, executors as aforesaid, have not paid said plaintiff the money and costs due by virtue of said judgment, nor have they paid said plaintiff the costs awarded against them by said decree of said circuit court, nor have they paid said plaintiff the damages aforesaid, nor in any way performed or satisfied said decree, but to pay the said judgment, costs and damage, and every part thereof, and to perform said decree the said Horatio N. Johnson and A. G. Calvert, executors as aforesaid, have, and each of them hath, hitherto wholly neglected and refused; by reason whereof, the said writing obligatory hath become forfeited and an action hath accrued to said plaintiff to demand and have for the use aforesaid of and from the said defendants the said sum of $1,400.00 above demanded; yet the defendants, although often requested, have not, nor have either of them, paid to said plaintiff the said sum of $1,400.00 or any part thereof, but the same to pay have, and each of them hath, hitherto refused, and they do, and each of them doth, still refuse, to the damage of the plaintiff $1,400.00; and therefore it sues, &c."

When the declaration was filed, the common order was entered, and at January rules, 1885, this common order was confirmed, and a writ of enquiry awarded; and at a term of said court held on September 29, 1885, the following order was entered in said case:

" This day came the parties, by their attorneys, and the defendants, Horatio N. Johnson and Albert G. Calvert, tendered and offered to file their joint special plea in writing, and the defendant, John C. McEldowney, tendered and offered to file his certain special plea in writing, to the filing of each of which said pleas the plaintiff objected, which objection the court overruled, and said pleas ordered to be filed, which is here now done. And thereupon the plaintiff demurred to each of said pleas, and the defendants join in said demurrer, and the matter of law arising upon said demurrer being considered, it seems to the court that the same is not well taken. Therefore it is considered by the court that said demurrer be overruled and said pleas sustained, and that the

plaintiff take nothing by its bill and the defendants go thereof without day and recover against Jehu Johnson their costs about their defence in this behalf expended. And on motion of plaintiff, the execution of this judgment is suspended for the period of sixty days to allow time to apply to the Surpreme Court for a writ of error and *supersedeas.*"

The pleas referred to in said order are as follows :

"And for plea, these defendants, A. G. Calvert and Horatio N. Johnson, come and say that the plaintiff ought not to have or maintain his said action because they say that the said injunction was obtained by them as the executors of O. P. Johnson, deceased, and that it was improper for the court to require bond of them under the statutes and laws of West Virginia, and that the said pretended bond is not valid, it not having been their voluntary act, they having heretofore filed in the clerk's office of this Court their certain bond as executors of the estate of O. P. Johnson, deceased, a copy whereof is here to the court shown marked Exhibit " A " as part of this plea; and that the plaintiff is entitled to sue upon the said bond of these detendants as executors of the estate of O. P. Johnson, and recover the amount of their said demand provided the same is legal and just. All of which these defendants are ready to verify. Wherefore, &c."

" And for plea the defendant, John C. McEldowney, comes and says that he is but the surety upon said pretended bond ; and further says that the pretended bond sued upon is not valid under the laws of West Virginia. And this he is ready to verify. "

From the judgment entered by the court on September 29, 1885, the plaintiff has obtained a writ of error and *supersedeas.*

Opinion by GREEN, JUDGE :

The petition of the plaintiff in error assigns two errors in this judgment of the court, first in allowing said pleas to be filed before the office-judgment or proceedings at rules were set aside, and second in overruling the demurrer to the pleas and dismissing the plaintiff's action at the costs of the real plaintiff, Jehu Johnson.   There is nothing in the first assignment of error.   Under section, 4 ch. 125 of the Code (Warth's Code p. 708), when the defendents appeared and pleaded to is-

sue, not before, as the plaintiff's counsel assumes, the office judgment should have been set aside. Although the entry of its judgment made by the circuit court on September 29, 1885, is not in proper form, yet the office-judgment was as effectually set aside by this judgment, as if the entry had stated in express words, as it should have done, that this office judgment was set aside. Is the second assignment of error well taken ? It is a fundamental rule of pleading, "that on a demurrer the court will consider the whole record and give judgment for the party, who on the whole appears to be entitled to it." (Stephens on Pleading p. 162). Under this rule, if there be a demurrer to a plea and joinder therein, the court will first examine the declaration, and if it be defective in *substance*, not in *form* only, it will give judgment for the defendant, no matter how defective the plea demurred to is in form or substance.

The first enquiry in this case then is : Can the plaintiff maintain this action against the defendants on the facts stated in the declaration ? These facts are, first, that the defendants on August 1, 1882, executed to the State of West Virginia an injunction-bond fully described in the declaration hereinbefore given at length ; second, on September 23, 1884, the injunction was dissolved, and the court entered the usual decree, which by our statute should be entered, when an injunction to the enforcement of a judgment is dissolved; that is, that the executors of O. P. Johnson, deceased, out of the funds in their hands as such executors should pay the amount of the judgment enjoined with the interest and costs· and damages as prescribed by section 12, ch. 133 of the Code, (Warth's Amended Code, 738) except that that portion of the decree, which gave judgment for the costs of the chancery suit against Horatio N. Johnson and A. G. Calvert, executors of O. P. Johnson, deceased, did not order that these costs should be paid out of the assets of their intestate in their hands to be administered; third, the non-performance of this decree by the executors. The plaintiffs in the declaration claims, that by reason of these facts this injunction-bond has been forfeited, and that the plaintiff is entitled to recover of the defendent the penalty, no part of which, it is alleged, has been paid.

It appears on the face of this injunction-bond, that the judge of the curcuit court of Wetzel in granting to the executors of O. P. Johnson an injunction to stay the enforcement of a judgment against them as such executors, required them to execute an injunction-bond.   So far as I can ascertain, there never was a time in Virginia, when a chancellor, judge or court in awarding such an injunction required an injunction-bond to be given by the personal representatives of a defendant.   If such discretion ever did exist in Virginia, it has not existed since 1850, and never has existed in this State.   As showing the state of the law in Virginia anciently I would refer to the remarks of Judge Green in *Lomax* v. *Picot*, 2 Rand. 264, &c.   These remarks were *obiter dicta* and, it seems to me, are not in all respects in accord with the previous decision, but as they present the history of the controversy as to whether a chancellor in awarding an injunction to a personal representative had any discretion as to whether a bond should or should not be required. I give his remarks at length.   He says :

"The court of chancery had originally a discretion as to the terms upon which injunctions should be awarded.   A sound discretion upon this subject required, that the court should take care that the terms should be such as to insure, with all practical certainty, that the defendant should sustain no ultimate loss, in case the injunction should be dissolved. The discretion still remains unless controlled by statute.   And if controled, in any respect, still remains, so far as not so controlled.   As long since as 1744, it was provided, that before any injunction should be granted, to stay proceedings at law in any action, suit or judgment whatsoever, the party praying the injunction, should enter into bond, with security, in the clerk's office, for satisfying all money, tobacco and costs then due, or which might become due, to the plaintiff in the action, suit or judgment to be staid; and all costs which might be awarded against such parties, if the injunction should be dissolved.   This provision, upon change in the organizations of the courts and revisals, was reenacted with some modifications in the phraseology, which do not effect the question under consideration and now stands in our Code in these words:   'Where any injunction shall be

granted, the clerk shall endorse upon the *subpœna* that the effect thereof is to be suspended, until the party obtaining the same, shall give bond with sufficient security, in the office of the court, in which the *judgment* to be enjoined shall have been obtained. The party obtaining the injunction shall *then* enter into bond with sufficient security, and file the same in the clerk's office of that court in which the proceedings at law were had, for paying all money or tobacco and *costs* then or to become due to the plaintiff in the action at law, and also all such *costs and damages* as shall be awarded against him or her, in case the injunction be dissolved.' (Code of 1819, secs. 113 and 114 of ch. 66, vol. 1, p. 218).

"As to cases coming within the provision of this act, and emphatically in cases of injunctions to judgments at law, the statute is explicit and imperious, and takes from the chancellor all discretion as to the security, as clearly as words could do, unless the statute had provided emphatically that he should have no such jurisdiction. But, it is said, that exceptions have been allowed to the effect of those laws, upon the circumstances of the case; and this could only be done upon the ground, that the original discretionary power of the chancellor or the court, as to the terms upon which injunctions should be allowed was not taken away by the statutes, and that, for the same reasons which have excepted the cases alluded to from the operation of the statute, all cases should be excepted, in which the security required by the act would be superfluous. The cases alluded to are those of executors and administrators; as to which the courts seem uniformly to have held, that they are not bound to give security under the act; not because such security can be disposed with in all cases, but because, upon a just construction of the law, it does not extend to those cases, but only to cases in which the party prays an injunction in his own right. And as a proof of this proposition, it has been said, that as the terms of the act require the party giving such bond, to stipulate absolutely for the payment of the debts, &c., if the injunction shall be dissolved, an executor or administrator could not assert the right of the estate which he represents, without incurring a personal responsibility, which would frequently deter such trustee from asserting such right. (*Shearman, administrator,*

*&c.* v. *Christian et al.*, 1 Rand. 393 and cases there cited); that therefore the act should be construed to require bond and security only from those already bound by the judgment at law; and that construction was the more reasonable, since it could not prejudice the creditor, the executor or adminis-trator having already given good security in general for the due administration of the assets."

Judge Coalter says on page 268 : "That injunctions may be awarded without security in cases not coming within the intention of the law, as in the case of executors, administra-tors, and other fiduciary characters, when they are not per-sonally responsible, or in some other cases mentioned at the bar there has never been any doubt."

In the case of *Shearman, adm'r* v. *Christian*, 1 Rand. 394, it appears, that, though the statute requiring bond and security upon appeals was general in its terms with no exception in case of personal representatives, yet it was construed to ap-ply only to persons appearing in their own right; and it was so held in that case.    The language of the statute with ref-erence to the granting of appeals was : "Before granting any such appeal, the party praying the same being a defend-ant, or some other responsible person shall enter into bond with sufficient security, in a reasonable penalty, with con-dition to satisfy and pay the amount recovered and all costs, in case the same should be affirmed."    (R. Code of 1819 ch. 66, sec. 50, Vol. 1 p. 206 ).    Positive as this statute seems to have been in requiring bond and security in appeals in every case, yet in view of the obvious impolicy and wrong of construing it to apply to appeals by personal representa-tives as such it was held, that under it appeals should be granted to that class of persons without requiring any bond. Thus both with reference to injunctions, appeals, and writs of error and *supersedeas* despite the positive and emphatic lan-guage of the statute-law it seems always to have been the policy of the State not to require bonds of personal represetatives. The syllabus in *Wilson* v. *Wilson*, 1 H. & M. 16, is :

"1. Executors and administrators having given security for their administration are not to be required to give security on obtaining injunctions, appeals, writs of error or *supersedeas*.

"2. When debts due to a person deceased are attached by

his creditor in chancery, his executors or administrators may appear, file their answers and have the attachments dissolved on their motion without giving security."

The court say: "There can be no doubt but, if an executor or administrator obtains an injunction or appeal, writ of error or *supersedeas*, he is not ruled to give security, except in cases where a judgment for a *devastavit* has been obtained against him because he represents the estate of a deceased person for the faithful administration of which he has already given security, and in prosecuting or defending a suit for or against his testator or intestate as the case may be, he does that which in law is injurious to a creditor, the securities for his administration are liable; and because too if you compel him to give security in those cases, in order that he may be enable to do justice to his testator or intestate's estate, you compel him to make the debt his own, although he should be guilty of no improper act. It is the usual course of the country—it is every day's practice in all our courts of law and equity, to allow an executor or administrator, who stands in right of another to prosecute or defend himself without security. And why should he not in a case like the present? It is contended by the plaintiff's counsel, that administrators should give security because the words of the statute, Revised Code of 1803, vol. 1, ch. 78, secs. 2 and 3, page 115, are general and make no exception as to executors and administrators. But though the words of the statute be general, they are not more so than the words of the statute relating to an injunction in the same book (R. Code of 1803, vol. 1, ch. 64, secs. 55 and 56, p. 68), nor are they more so than the statute concerning appeals, writs of error and *supersedeas*. (Rev. Code of 1803, vol. 1, ch. 66, sec. 56, p. 82). Yet in all these cases, the rule has prevailed that executors or administrators may obtain an injunction, an appeal, a writ of error, or *supersedeas*, without security, upon this plain construction of the statute, before mentioned, that, though their words be general, they can only be applied to those persons who stand upon their own rights, and shall not be allowed to delay others, until they have done that which executors and administrators have done, that is to say, give security. If this be a sound exposition of these statutes, such must also be the

construction of the one under consideration; and therefore no good reason can be given to prevent the two administrators from having the attachments in this case discharged, without other security than that they have given for their administration. To say that the attachments shall continue, notwithstanding the defendants have entered their appearance and filed their answer, may be to compel these defendants to commit a *devastavit*, an act which under circumstances, that sometimes occur, this court would lend its aid to prevent, but will not be the means of producing."

I may refer to the cause of *Saddler* v. *Green*, 1 H. & M. 26, and *Dunton* v. *Robins*, 2 Munf. 341, as in accord with the views I have expressed.

The provisions of ch. 78, secs. 1 and 2 of Rev. Code of 1803, p. 115, passed December 26, 1792 was: "If an absent defendant (in an attachment cause) shall not appear and give such security (for performing the decree of the court), within the time limited, the court shall hear proof and decide the cause." Though under this act every other absent defendant was required, before he was allowed to appear and defend himself, to give this bond to perform the decree of the court, yet it was held despite the broad language of the act, that, if the absent defendant was a personal representative, he could appear without any security being given and defend the writ. The law with reference to injunction-bonds passed November 29, 1792, which it is believed was substantially similar to the preceding acts, which had been in force in Virginia, was as follows: "Where any injunction shall be granted (to stay proceedings at law), the clerk shall endorse on the *subpœna*, that the effect thereof is to be suspended, until the party obtaining the same shall give bond with sufficient security in the office of the clerk of the court, in which the judgment to be enjoined shall have been obtained. The party obtaining the injunction shall then enter into bond with sufficient security  *  *  *  for paying all money or tobacco and costs due, or to become due the plaintiff in the action at law, and also such costs as shall be awarded against him or her, in case the injunction shall be dissolved; and the clerk shall endorse on the *subpœna* that the bond is filed." (Rev. Code of 1803, vol. 1, p. 68, ch. 64, secs. 54, 55 and 56). And.

though this bond was thus required in every case, where a judgment was enjoined, according to the plain words of the statute, the courts decided, as we have seen, not only that such bond need not be required, where an injunction to a judgment against a personal representative of a deceased person as such was obtained, but also, as I understand the decisions, that no bond in such a case should ever be required of a per-personal representative, that is, that the chancellor or court in such case had no discretion to require such bond in such a case.

The Court of Appeals, as we have seen, under this statute puts the right to require bond and security of a personal representative, when he obtains an injunction to a judgment on precisely the same footing, as where they as such personal representative took appeals or obtained writs of error or *supersedeas*, or were sued as non-resident defendants, or where they were sued in cases, where in like suits bail could be required of the defendant. Yet we all know, that there never was a time, when bond and security could be required of a personal representative in any of these cases. It never was discretionary with the courts or with any one else to require bond and security of a personal representative in any such cases; but yet the courts of Virginia under the statute above quoted have held, that a personal representative in obtaining an injunction to a judgment against him stood on the same footing, as to the necessity to give bond and security, as he did in any of the other cases mentioned; and as in such cases he could not be required to give such bond and security, so he could not be required to give bond and security in such injunction suit. The non-accord of the remarks of Judge Green in *Lomax* v. *Picot*, 2 Rand. 269, with these previous decisions consists in his apparent assumption that a court of chancery in Virginia perhaps had in awarding an injunction to a personal representative to a judgment against him as such a discretion to demand the giving of a bond with security as one of the terms on which such injunction would be awarded.

It seems to me, these older decisions show, that a court of chancery in Virginia never claimed to have such discretionary power in such case; but that on the contrary they never

had demanded such a bond of a personal representative in such a case.   And the question discussed was whether having no such power the statute-law had not   only conferred it on them but required them in such case   to always   demand of a personal representative, when he obtained an injunction to a judgment against him as such, to give such   bond   and security.   The courts decided, that   despite the   broad language of the statute it did not apply to a personal representative asking such an injunction.   And if it   did not, it left the courts of chancery with reference to their   power to require such a bond of a personal representative in such a case, just as they always had been, without such   power.   The views of Judge Green seems to   me to apparently not accord with these   previous decisions, because he inferred   that because a court of chancery in England had originally a discretion as to   the terms, upon   which injunctions would be awarded, it would follow,   that the same court in   Virginia had this power, when not controlled   by statute, in all sorts of cases, whereas I understand from these old Virginia decisions, that independent of any statute-law the court   of chancery never had in Virginia the right as a condition, on which an injunction to a judgment against a   personal representative as such would be awarded, to require such personal representative to give bond and security.

If there was any doubt on this point prior to the Code of 1849 this doubt was forever put at rest by the adoption of that Code.   The provisions in it, which, it seems to me, settled this question, have been ever since in force in Virginia and have always been the statute-law of West Virginia.   This provision is contained in ch. 179, sec. 10 of Code of Virginia; p. 678 the same as ch. 133, sec. 10 of Code of West Virginia. (Warth's Code, p. 738.)   It is as follows:

"An injunction (except in the case of any personal representative or other person from whom, in the opinion of the court or judge awarding the same, it may be improper to require bond) shall not take effect until bond be given in such penalty as the court or judge awarding it may direct, with condition to   pay the judgment or decree (proceedings in which are enjoined) and all such costs as may be awarded against the parties obtaining the injunction and all such dama-

ges as shall be incurred in case the injunction be dissolved and with a further condition, if a forthcoming bond has been given under said judgment or decree, to indemnity and save harmless the sureties in said forthcoming bond, and their representatives against all loss or damage in consequence of said suretyship."

This statute means, it must be admitted, the same thing, as if it were worded as follows : "An injunction to a judgment or decree shall not take effect, until bond with the prescribed condition is given, except when the injunction is granted to a personal representative to a judgment or decree against him as such personal representative or except such injunction be granted to some other person from whom, in the opinion of the court or judge awarding the same, it may be improper to require bond." This is a simple transposition of the words made to render the meaning more intelligible. When we consider, that the court of appeals of Virginia had uniformly declared, that it was contrary to public policy to require such a bond, as is prescribed by this statute as a condition, on which an injunction would be awarded to a personal representative to a judgment against him as such, and that it was so obviously contrary to public policy to require such a bond, that the courts ought in construing a statute, which required such a bond to be given, whenever an injunction was granted to any judgment or decree, to interpret it as not applying to a judgment against a personal representative, though in giving it such interpretation they had apparently violated the express wording of the statute. I do not see how we can interpret this statute otherwise than as meaning, that, when an injunction is obtained to a judgment or decree against any person, it shall not take effect, until the bond and securities prescribed by the statute is given before the clerk, unless in the opinion of the court or judge awarding the injunction it may be improper to require bond, except in the case of any personal representative, as to whom it is always improper to require such bond. If the statute mean, as is contended for by the counsel of the plaintiff in error, to put personal representatives on precisely the same footing as all other persons and to require of them as of others the prescribed bond and security, except when in the opinion of the court or

judge awarding the injunction it was improper to require bond, why did the words in the parenthesis in this statute except *positively* the case of any personal representative and except other persons, only when in the opinion of the court or judge awarding the injunction it might be improper to require bond? If no distinction was intended to be made between the discretion given the judge in requiring a bond of other persons and the case of a personal representative, why name a personal representative in this parenthesis at all? Why was it not worded simply: ("except when in the opinion of the court or judge awarding the same, it may be improper to require bond.")? If this had been the meaning of the statute, why in this parenthesis was there inserted a whole line, which was worse than useless? For if it had been left out, the meaning of the legislature, if it is what is contended for by the plaintiff in error, would have been perfectly clear.

There is in my judgment another plain indication, that the legislature never intended any bond to be given, when the injunction was to a judgment or decree against a personal representative as such. Such a judgment is a judgment to be paid out of the assets of the testator or intestate in the hands of the personal representative to be administered; and when this law was passed these assets were to be distributed among classes of creditors *pro rata* in the manner prescribed by statute, and on such judgment against a personal representative as such an execution could be issued and levied on the goods of the decedent in his hands so as to give him precedence, and therefore no forth-coming bond could be given under a judgment against a personal representative as such. And yet this statute says in prescribing the condition of such injunction-bond. "If a forth-coming bond has been given under said judgment or decree," a further prescribed condition has to be added to this injunction-bond. Of course by the judgment or decree before spoken of, on the enjoining of which this injunction-bond was to be given, must have been meant a judgment or decree, under which a forth-coming bond might have been given, and therefore it did not include a judgment or decree against a personal representative as such; and therefore it might be enjoined by him without giving an injunction-bond.

The interpretation which we have given to this statute ch. 133, § 10 of Code of West Virginia in holding that the words at the end of the clause in parenthesis "from whom, in the opinion of the court or judge awarding the same, it may be improper to require bond," qualified only the words just preceding them "other person" and did not qualify the words in the beginning of this parenthesis, "except in the case of any personal representative," and that in such case the exception was *positive and unqualified,* is an interpretation of this parenthetical clause similar in character to the interpretation given by the court of appeals of Virginia in *Guerrant* v. *Anderson,* 4 Rand. 211, to what is now section 5 of ch. 74 of Code of West Virginia, p. 474. It was thus worded : ."Every deed, &c. shall be void as to creditors and subsequent purchasers for valuable consideration without notice, until and except from the time it is duly admitted to record." This act was interpreted by the court as rendering such deed, &c., absolutely and without qualification void as to creditors, but as to subsequent purchasers void only with the qualification "for valuable consideration and without notice," and that the words "without notice" had ro relation to a creditor. The court say on page 211 "that these words have no relation to a creditor either by their position in the sentence or the context." In my judgment we are much more justified in confining the qualification in the statute we are constructing to "other persons" to the exclusion of personal representatives.

My conclusion is therefore, that a judge or court in awarding an injunction to a personal representative to a judgment or decree against him as such has no authority to require him to give any bond, before such injunction shall take effect.

But it is insisted by the counsel for the plaintiff in error, that, though this be so, and the bond sued on is not good as a statutory bond, it is nevertheless good as a common law bond, and as such it would suffice to sustain the plaintiff's action. It is true, that in many cases a bond may not be good as a statutory bond yet be held good as a common law bond. On the other hand bonds taken as statutory bonds have often been held not only not good as statutory bonds but also invalid as common law bonds, and therefore null and

void. It is often a nice question to determine, when a bond taken as a statutory bond and inoperative as such is good as a common law bond, and when it is null and void. The question was under consideration in *Porter* v. *Daniel*, 11 W. Va. 253. After careful examination of the subject I then said :

"The mere fact, that a bond not authorized by law has been taken by an officer, does not render such bond invalid at common law. Such bonds have been frequently held void at common law, but whenever so held, it is not simply because taken by an officer without authority, but for other and sufficient reasons appearing in each particular case. Such as that · they were not voluntarily executed ; that they were given to an officer to induce him to violate his duty as such officer ; *or to induce him to perform a duty he was bound to perform without the giving of such bond ; that the taking of the bond was oppressive and it was given without consideration* ; that the obligee in the bond had no interest in the subject matter ; *that the taking of the bond was a violation of public policy* or was executed under circumstances, or contained provisions, which would have rendered a private bond void at law. If on the other hand such a bond is not liable to these or other sound objections, it has constantly been held valid at common law ; the mere fact that it was taken by an officer, who was not authorized by law to take such a bond has never been held sufficient to render the bond invalid at common law. The books are full of cases which illustrate these principles."

In addition to the numerous cases cited there to illustrate these principles, see the following cases cited by counsel in this cause, which I have examined : *Stevenson* v. *Miller*, 2 Litt. 308 cited in 12 W. Va. 725 ; *Cobb* v. *Curtis*, 4 Litt. 236; *Dabney* v. *Cutlett*, 12 Leigh 383 ; *Aylett* v. *Roane*, 1 Gratt. 282; *Cumberland Coal and Iron Company* v. *Hoffman Steam Coal Company*, 39 Barb. 16 ; *Harrison, &c.* v. *McKinzie*, 5 B. Mun. 314 ; *Mahan, &c.* v. *Tydings, &c.*, 10 B. Mun. 351 ; *Benedict* v. *Bray*, 2 Cal. 251 ; *Thompson* v. *Lockwood*, 15 Johns. 256.

In *Morgan* v. *Hale*, 12 W. Va. 713, the Court again reviewed this subject, and considered a number of additional authorities, several of which are among those above cited.

In the first of the above cited West Virginia cases the bond, the subject of dispute, was held to be a good common law bond; but in the last of those West Virginia cases the bond was held void as being against public policy. We have seen how decidedly the Virginia courts condemn as contrary to public policy the requiring of a bond with security of a personal representative on his obtaining an injunction to stay a judgment against him as such.

In this case the judge had decided, that the defendants below, Horatio N. Johnson and A. G. Catlett, as executors of O. P. Johnson, deceased, were entitled to an injunction to a judgment, which Jehu Johnson obtained against them as such executors. Under the law this injunction should have gone into effect forthwith without the giving of any bond. The bond sued on was given, as we must assume, before the clerk, before he would issue the subpoena and put the injunction order in force, as by the statute it was his duty to approve this bond and was to indorse on the summons, either that the injunction was not to take effect, till this bond was given, or to endorse upon it that the bond had been given. Although it is not in the declaration alleged, that these were the circumstances surrounding the giving of this bond, yet, as the law requires every injunction-bond to be given in this manner, we must assume, that this was the way, in which the injunction-bond sued on in this case was given. The requiring of such a bond to be given, before the principal obligors could get the benefit of an injunction, to which they were entitled without the giving of any bond, is, as we see, held by many Virginia cases to be against public policy; and therefore upon the principles above laid down this bond sued on must be held to be null and void both as a statutory bond and as a common law bond; and the plaintiff in error cannot complain of the judgment of the circuit court of September 22, 1865.

It is true that in the state of Kentucky, whose statute-law was substantially the same as ours formerly was, it has been decided that an injunction-bond given by a personal representative to enjoin the collection of a judgement against him as such personal representative is not void as a statutory bond, but while it was held, that such a bond was not void, it was nevertheless held, that it ought

not to be construed as binding the obligors in such bond to pay the amount of the judgment enjoined, in case the injunction was dissolved, but only as binding them, in case the injunction was dissolved, to see that the personal representative applied .to the payment of such judgment any assets in his hands, or which might come into his hands, which were legally applicable to the payment of such judgments. This was decided in *Mahan* v. *Tydings*, 10. B. Mun. 351. On page 351–5 the court say :

"The defence rests on the single position, that an executor can not be legally required to execute a bond on obtaining such an injunction as this, and that the bond executed under such requisition is void. This we can not admit. The statute of 1796 and 1798 (Statute Law 806–10) makes no exeception or exemption but requires when an injunction is ordered, the complainant or complainants shall give bond. And although there may not be as much reason as in other cases for requiring bond from executors or administrators who has already executed bonds under public authority for the due administration of the assets, it does not follow that they are to be excepted from the statute by construction, nor that they ought to be exempted by the Legislature, unless some further provision be made for the security of the creditor. Executors do not always give security for the performance of their duties, this being some times dispenced with by their testator, and if it is assumed that the security given upon the qualifications of the executor or administrator is in every instance, sufficient when he is secured, it can not be assumed that this continues invariably the case, or that as soon as the security becomes doubtful or insufficient, a new one is required and given, or that the executor or adminis_ trator seeking an injunction will disclose in his bill the facts either that he gave no security or that the security given. has become doubtful or insufficient.

"Then conceding, as we are inclined to do, that if an executor conceives, that the interest of the estate which he represents can only be maintained by suspending the proceedings of a particular creditor until the matter of right can be heard in equity, he should be allowed to obtain an injunction for this purpose upon the responsibility of the estate for

whose benefit he is acting, without incurring other responsibility on his part than for the due administration of the assets; still it would seem to be unreasonable that the creditor who is diligently prosecuting his remedy upon the assets, should be subject to the legal obstruction presented by an injunction, without special or direct security, that when the obstruction being found wrongful is removed, he will not find himself in a worse condition than if he had not been impeded; and it would seem to be just and reasonable that the law which authorizes the obstruction for the benefit of the decedent's estate should furnish an indemnity to the creditor by requiring from the representative of the estate a bond which shall secure the due application of the assets, whereby if his debt might and should have been paid if it had not been enjoined, it may, when the injunction is dissolved, still be paid, together with the ordinary remuneration for the delay and expense which has been incurred, so far as there were assets at the date of the injunction, or afterwards, which in the due course of administration should be applied for this purpose. Such a bond it is true would be but auxiliary to the original executorial bond. But it would have specific relation to the debt enjoined, and would furnish a specific remedy and a specific security, for the due application of the assets, so far as that debt is concerned. Which, while as already shown, it seems to be in all cases proper, is or may in many cases be necessary for the security of the creditor who is obstructed and delayed. And the law makes no discrimination between the cases, and furnishes no means of making it, on the ground of previous security being or not being sufficient. Nor do we perceive any greater reason for not requiring this additional and specific security from an executor who has already given bond for the due administration than there would be for not requiring new security from an individual who has already secured the debt.

"With these views we are not prepared to follow the cases referred to in Virginia and Indiana, to the extent of determining that an executor or administrator is entitled to an injunction without entering into any new bond for the purpose. But we admit the force of those cases as demonstrating the impropriety of requiring the fiduciary to incur a di-

rect personal responsibility for the debt of the estate which he represents as the condition of his obtaining an injunction for the protection of the estate from what he conceives to be an inequitable and unjust demand. And as the statutes make no discrimination in the requisition that the complainant obtaining an injunction shall give bond, &c., the difference between the cases of an executor enjoining a judgment against him in that character, which affects the assets only, and an individual enjoining a judgment for his personal debt, would seem to indicate, not that the bond should be altogether dispensed with in the former case, which would violate the letter of the statute, but that the bond should be adapted to the nature of the case and bind the executor and his surety, in case the injunction should be wrongful and be dissolved, &c., to pay the judgment, &c., out of the due course of administration, to the extent that the same might be properly applied thereto. Such a bond would secure the creditor against loss from a mal-administration of the assets to his prejudice during the pendency of the injunction, and in fact against any loss which might properly be attributed to the improper suspension of his legal remedy. Such a bond is all the security the creditor can justly require and all which the statute justly construed authorizes."

On page 357-8 the Court further says: "There is no doubt that the obligation to pay the penalty is personal upon the obligors, but it is subject to the condition underwritten, which shows that its whole object and purpose was to obtain the injunction therein referred to, that the said injunction was obtained by the executrix as such, and that the bond was to be void if she as executrix should pay, &c.   *   *   *   As the condition though in form, expressing only the condition on which the bond is to be void, is, in fact, intended and understood to designate the duty to be secured by the bond, a failure of which is to constitute a breach of the condition, and trust to give a cause of action, the question is whether this condition, expressing that the bond is to be void if the said Lucy Ann, as executrix, should in case the injunction be wrongful, pay a judgment against her as executrix and enjoined by her as executrix, may not and should not be understood as referring wholly to her character and duty as exe-

cutrix; and whether the provision that if, as executrix, she should pay, &c., the bond shall be void, does not import according to the usual office of the conditions annexed to bonds, that the duty intended to be designated and secured by the bond, was that of paying as executrix, which must be in the due course of administration, and would of course bind her to pay only out of the assets, which according to the laws of administration were, or ought to have been, then in her hands, or which might afterwards come.

"If such be the construction and effect of the bond, it would, as already shown, meet all the requisitions of justice and of the statute, securing to the creditor all that he can rightfully ask, and imposing no unjust or oppressive liability on the executrix and her surety. These considerations operate strongly in favor of such a construction, and whatever might be the case, if this were a private instrument, executed between party and party, each having an equal right to prescribe its terms and control its language, we are of opinion that, regarding it as an instrument drawn up for a particular purpose by a public officer under the command of the law, and executed by the parties, as must be presumed with the skill and fidelity of the officer, it should, if possible, be so construed as to accomplish its proposed objects under the law, of furnishing to the creditor the contemplated security, without imposing upon the other party any greater obligation than the law intended to impose, and which being greater than the law or the occasion requires, would at once be unjust and oppressive. We are further of opinion that the condition of this bond, may and in view of the subject matter, and its manifest object and consideration, and of the circumstances under which it was executed, and of the law requiring it, should be construed as imposing, no other duty than than that of paying, as executrix, out of assets, if there be any applicable to the debt enjoined, and if there are no assets thus applicable, the non-payment is no breach of the duty intended to be secured, and no breach of the condition of the bond."

On page 359 the Court say: "It follows that the declaration should have been adjudged insufficient upon the demurrer to it and that if it were drawn as it should be, the third

and fourth pleas which were pleas of *plene administravit* and no unadmistered assets would each be a sufficient answer.   And as the demurrers to each of these pleas reaches the declaration, the defendents were entitled to judgment on the demurrers, on the ground that the declaration is insufficient.   Whereupon the judgment is reversed and the case remanded with directions to overrule the demurrers to the pleas on the ground the declaration is bad, and unless the plaintiff should amend his declaration to render judgment in bar of the action."

In the case before us the court below did render judgment in bar of the action ; and this judgment we must affirm, as according to the Virginia cases and the views we have expressed the declaration is incapable of amendment, as the injunction-bond sued on is absolutely void, the requiring of any injunction-bond in an injunction procured by a personal representative to enjoin the enforcement of a judgment against him as such being contrary to public policy and not authorized by our statute-law.

I have given the reasoning of the Kentucky case at some length, not because I approve of the conclusion, which that court reached, but because the declaration in the case before us must be held bad on demurrer, unless the principles, upon which we must act in construing statute-law authorizing or claimed to authorize injunction-bonds to be required of personal representatives to judgments against them as such are utterly erroneous and unfounded.   Though the Kentucky court of appeals in this case, it seems to me, showed too strong an inclination to sustain as not void such an injunction-bond, yet they so construed its meaning, that in a great majority of cases the bond would be of no value to the creditor, where judgment was enjoined, and would really furnish him no security whatever.   And even in the few cases, where any additional security was furnished by the giving of such injunction-bond, yet according to this Kentucky case, "such injunction-bond would be but auxiliary to the original bond of the personal representative ;" and as such additional bond can always be required of any personal representative, whether he gave originally a bond or not, whenever the protection of any creditor of the estate requires the giving of

such bond, it does seem to me, that the conclusion, which I have reached, that such bond is void, because the taking of any injunction-bond of any personal representative and by obtaining an injunction against him as such, is not only unauthorized by law but is also contrary to public policy, is more convenient to all and is really not injurious to any.

If however any injunction-bond should have been required in this case, its condition would have been different from that annexed to the injunction-bond sued upon. The condition set out in our statute, where a judgment or decree is enjoined, is "to pay the judgment or decree (the proceedings on which are enjoined) and all such costs as may be conceded against the party obtaining the injunction and all such damages as should be incurred or sustained by the person enjoined in case the injunction be dissolved." (Code, ch. 133 sec. 10, Warth's Code p. 738). The condition of the injunction-bond sued on in this case is according to the declaration, "that the said Horatio N. Johnson and A. G. Calvert, executors as aforesaid should pay any judgment or decree which might be awarded or entered against them in said proceedings (the chancery cause in which the injunction was awarded) and all costs and damages, which should be awarded against them by said court, and also such damages as should be incurred or sustained by Jehu Johnson, in case said injunction should be dissolved." The statutory-bond has annexed to it a condition to pay the judgment enjoined; the bond sued on in this case has annexed to it a condition to pay the decree, which the chancery court might thereafter render in the chancery cause, in which the injunction was awarded. The declaration states, that the order granting the injunction required a bond to be given. Of course under such an order, if the judge had any authority to require a bond, the clerk could have required in any case only the statutory bond to be given; but the declaration shows, that he required an entirely different bond to be given; and for the reasons we have stated such bond so improperly required by the clerk, before he would endorse the *subpœna*, so that the injunction should take effect, was void as a common law bond, the requiring of it being contrary to public policy. But if it had been good as a common law bond, the plaintiff would not

have been benefited, as the condition of it was that "Horatio N. Johnson and A. G. Calvert should pay any decree entered against them in the chancery cause," and the decree entered as stated in the declaration was a decree against them as executors of O. P. Johnson to be paid out of the funds in their hands as such executors. Now a decree against them individually, which this injunction-bond required the obligors in it to pay, is entirely different from a decree against them *as executors of O. P. Johnson*; and such decree they could not by the injunction-bond be required to pay, as claimed in the declaration. The declaration in any view that can possibly be taken of the law was fatally defective in substance.

The pleas of the defendants were insufficient both in form and substance, whatever view be taken of the law. The only fact pleaded by Horatio N. Johnson and A. G. Calvert is that they "had hertofore filed in the clerk's office of this court their certain bond as executors of the estate of O. P. Johnson, deceased," and even this fact is pleaded improperly, it being set out not positively but by way of recital. The plea does not say that they had filed such bond, but says "having" filed such bond. But it would not, whatever we regard as the law governing this case, make any difference, whether such executorial bond had or had not been given. It was an entirely immaterial fact. (*Mahan* v. *Tyding*, 10 B. Mun. 354). The balance of this plea violates the well established rules of pleading to such an extent, that it should be styled an argument of counsel for the defendants rather than a plea. The plea of John C. McEldowney is insufficient for the same reasons. The only fact alleged in his plea is, that he was but a surety in the bond sued on. It is immaterial whether he was surety or principal. His liability would have been the same in the one case as in the other. But, as we have said, it is immaterial on the demurrer to these pleas, whether they be or be not sufficient, if the declaration is fatally defective in substance, as we have seen it is.

There is another view of the law involved in this case, which would render the bond sued on void. From the cases of *Wilson* v. *Wilson*, 1 H. & M. 15; *Saddler* v. *Green*, 1 H. & M. 26; *Dunton* v. *Robins*, 2 Munf. 341, and *Shearman* v. *Chris-*

*tie*, 1 Rand. 303, I infer, that a chancellor or court never had in Virginia any authority to require any bond of a personal representative on awarding an injunction to a judgment against him as such, nor was any court authorized to require bond of him in any case of any sort, when prosecuting or defending any matter, in which he had no personal interest, but in which the estate he represented was alone interested, because it was contrary to public policy to permit such a bond to be required; and that the legislature, though they passed many laws, which apparently conferred such authority in injunction-cases, and used in them general language as in many other cases requiring bonds to be given in every case of the general character described, before a party should prosecute or defend, making no exception of personal representatives, yet these statutes were soon decided *not intended to* change the established law of Virginia, and did not require personal representatives to give bonds in any such cases, having no application to them, and of course conferred no power on the judges or courts or officers to require such bonds from personal representatives in any cases of this character.

These decisions so construe the statute-law of Virginia up to the Code of 1849, when the law now in force in this State on the subject of injunction-bonds, where judgments were enjoined, was passed.

If I am wrong in construing this law to forbid bonds to be required of personal representatives on obtaining injunctions to judgments against them as such, I think it must be conceded that the law does not confer authority to demand such injunction-bonds of personal representatives; and if it does not, then the law remains what it always has been in Virginia, independent of statutory law; and no court or judge can require surety in such a case of a personal representative asking an injunction to a judgment against him as such.

I am for these reasons of opinion, that the declaration of the plaintiff shows on its face that the plaintiff had no cause of action, and that there is no error to his prejudice in the order made by the circuit court of Wetzel on September 29, 1885; and there was no error in rendering judgment against him dismissing his suit at the costs of the relator, Jehu Johnson. The judgment of the circuit court of Wetzel county

must therefore be affirmed, and the defendants in error must recover of the plaintiff in error their costs in this Court expended and $30.00 damages.

Snyder, Judge, *dissentiente.*

AFFIRMED.