CHiSf JUSTICE PRYOR
delivered the opinion op the court.
In the year 1863 Virginia K. Cotton, mother of the infant appellants, was appointed and qualified as their statutory *242 guardian in Woodford County Court. She removed to the county of Jefferson in the year 1867, and in December of that year intermarried with William H. Terrell. In a short time after her marriage, in the month of February, 1868, being advised by Charles Cotton, who was the surety in her guardian’s bond, and by the judge of the Woodford County Court, that her marriage terminated the guardianship, she delivered over to Cotton many of the papers connected with the trust, to enable him to make a settlement of her accounts with the Woodford County Court. A settlement was made by her agent and surety, Cotton, showing the balance in her hands, and having removed with her children to the county of Jefferson, and under the belief that she was no longer guardian, application was made to the County Court of Jefferson for the apppointment of another guardian, and the surety, Chas. Cotton, qualified as such by executing the usual statutory bonds with appellee George Wolf as his surety.
The order appointing Cotton guardian recites, “ It appearing from an affidavit this day filed that Virginia K. Terrell has been removed as guardian of Kate, Sallie, and Willie Cotton by an order of the Woodford County Court, therefore, on motion of Charles Cotton, the court appoints him guardian,” etc.
The bond executed is: “Whereas, Charles B. Cotton has been appointed by the County Court of Jefferson County, and has qualified as guardian of Sallie B. Cotton, a minor, orphan of William Cotton, deceased, and now under fourteen years of age. Now we, Charles B. Cotton, as principal, and George Wolf as surety, do hereby covenant to and with the commonwealth of Kentucky that the said Charles B. Cotton will faithfully discharge the trust of guardian to said minor¿n all respects, as required by law.” A similar bond was given as. guardian of each of the other children. Cotton, the guardian, was himself indebted to the infants, or to their mother, as *243 guardian, in several thousand dollars at the time he qualified, and made collections of moneys from the mother, due from her to the infants, after she ceased to act as guardian, and having made two or more settlements of his accounts with the Jefferson County Court, and, becoming embarrassed, and in fact insolvent, resigned his trust, and J. C. Bonney was appointed guardian of two of the children, one of them having died. She is now seeking, in this action, to make Wolf, the surety of Cotton, liable for the amount found due by the latter in his settlement had with the Jefferson County Court, the sum exceeding $10,000.
One of the infants had arrived at the age of fourteen years and chose her grandmother, Mrs. Bonney, as guardian, and this action is' instituted by her as the guardian and next friend of both the infants. The administrator of the deceased infant is also a party to the action, and asserting that interest.
It seems that in the settlements made by Cotton he had failed to keep a separate account with each ward, and the accounts being blended the one with the other, this action was brought in equity, and a reference to the commissioner asked for the purpose of severing the accounts and ascertaining .the amount due each one of the wards. No objection, however, is made to this mode of proceeding.
The appellee Wolf, the surety, relied on several grounds for preventing a recovery: 1. Md tiel record, because Bennett, who made the appointment and approved the bonds, was not the judge of the Jefferson County Court; 2. The bonds are void because the Woodford County Court had previously appointed the mother guardian, and she never having been removed and never having resigned her trust, was the guardian when Cotton was appointed and qualified in the Jefferson ^County Court. He therefore says the appointment was coram non judice; 3. The principal sum alleged to be due is not chargeable to Cotton’s account as guardian.
*244 Moses Bennett, who presided as judge of the Jefferson County Court at the time Cotton qualified as guardian, was not the regular county judge, but in the absence of that official had been elected by the members of the bar to fill his place. This election was held, under an act of the legislature, approved January, 1867, giving authority to the members of the Louisville bar to elect pro tempore judges of the Jefferson County Court in the absence of the county judge, or when he fails, from any cause, to hold his court. The pro tempore judge is empowered to discharge all the duties, and required to possess the same qualifications as the county judge.
The county judge being absent, Moses Bennett, an attorney, as is shown by the records of the court, was elected and presided, and the presumption will be indulged that he possessed all the qualifications requisite to enable him to hold the court. It is not required that the record should show affirmatively every requisite of qualification; it is sufficient if it is made to appear that he was an attorney of the court, and was elected to preside, and did preside. These facts, and none other appearing, the validity of the proceedings, if within the jurisdiction of thfe court, must be conceded.
It is argued, however, that the act authorizing the election of a pro tempore judge for the Jefferson County Court is unconstitutional, and this position is attempted to be maintained, because the legislature is empowered, in express terms by the constitution, to provide by law for holding circuit courts in the absence of the judge, and no such provision is to be found with reference to the county courts.
The constitutionality of this act has not before been questioned in this court, and while we find nothing in the constitution prohibiting such legislation, still it is a question of much importance, and although the point is legitimately raised by the record, we deem the decision of the constitutional question immaterial in the present controversy, and will direct our *245 inquiry to the effect of Cotton’s attempted qualification as guardian, and the liability of his surety on the bonds made the basis of appellant’s action.
It is certain that Moses Bennett, an attorney of the Jefferson County Court, was elected by the attorneys of that court in the absence of the county judge, and presided at the time Cotton attempted to qualify as guardian and executed the bonds. That Mrs. Terrell was never removed as guardian, and never resigned her trust, in the Woodford County Court, is equally certain; and while the marriage might have been a sufficient cause for her removal in the absence of any consent by the husband that she should remain guardian, it did not dissolve the relation of guardian and ward, between the mother and her children. It is true she had abandoned in effect her right to the custody of the children and their estate, under the belief that the marriage had extinguished her right; still her sureties upon the bond could have been made responsible not only for the moneys found to be in her hands at the date.of her settlement, but for any other moneys or choses in action or other estate that should havé been collected or taken control of by her as guardian after that time, including the choses in action she had passed to Cotton, as well as his individual liability to her as guardian. If therefore she and her sureties are liable upon her guardian’s bond for this estate or its value, it is difficult to perceive how the surety of Cotton can be made liable, on a like statutory obligation, for the same estate ; in other words, there can not be two guardians of the same ward at the same time, the one holding under an appointment of the Woodford County Court made in the year 1863, and the other under an appointment of the Jefferson County Court made in the year 1868.
A guardian may be removed or permitted to resign his trust after a settlement of his accounts, or the ward after arriving at the age of fourteen years may choose another *246 guardian, but until this is done, or the guardian is removed or resigns his office, he can not at his own will and pleasure abandon or surrender his trust to another, and if he does, being still guardian, can be made to account, together with his sureties, for the estate of the ward.
In the case of Leavel v. Bettis, 3 Bush, 76, this court held that the marriage of a female guardian did not terminate the office of guardian, and the authorities, both in this country and England, conduce to the conclusion that by the consent of the husband she will be allowed'to remain guardian, even where proceedings have been instituted to remove her, if otherwise suited to have the care and control of the ward’s estate. (8 Simmons, 346; in re Gornell, 1 Beav. 348; Palmer v. Oakley, 2 Doug. 433.)
The statutes of this state nowhere determine the effect a marriage of the female guardian has on her right to continue the trust, and if made to rest on the rule of the common law, she may act as guardian, although a feme covert.
The order appointing Cotton guardian was therefore void, and did not create the relation of guardian and ward between Cotton and the infant appellants ; but while the appointment is void and confers no authority upon Cotton to act as guardian, it by no means follows that the bonds executed by Cotton are also void-and without any obligatory force.
“The general rule is that a bond, whether required by statute or not, is good at common law, if entered into voluntarily and for a valid consideration and if not repugnant to the letter or policy of the law.” (Thompson v. Buckhannon, 2 J. J. Mar. 418.)
When bonds are required to be executed or exacted from others in compliance with an illegal' demand from one in office, they are void as to the principal and surety, being without any consideration and contrary to public policy.
In the case of Florrance’s adm’r v. Goodin, 5 B. Monroe, *247 where a judgment was rendered without jurisdiction, it was held that a replevin - bond taken by the sheriff, under his authority to coerce the payment, was a nullity, and in all this class of cases the rule. applies, and the principle upon which it is based is, that it is contrary to the policy of the law to permit those in office to exact unauthorized bonds, and then enforce the illegal demand. Our statute now makes all .such bonds void. If such was the character of the bonds before us, we would have but little hesitation in arriving at the conclusion reached by the court below. The bonds in this ■case do not fall within the class of cases referred to. Here the parties not. only voluntarily executed the bonds, but at the instance of Cotton the appointment was made, and the law implies an obligation, thus voluntarily assumed, on both the principal and surety.
Cotton, of his own motion, was permitted to qualify as guardian, and by the execution of the bonds obtained possession of the estate belonging to each one of the infants, and after converting it to his own use, his surety, the party who enabled him to reduce it to possession by going on the bond, is now insisting that he is not responsible, because the entire proceeding under which the appointment was made is void. It is the policy of the law to protect the rights of infants and to secure to them the enjoyment of their estates, and one who voluntarily qualifies as guardian, whether in good faith or as a mere wrongdoer, and by the execution of a bond obtains the custody of the ward’s estate, will be held liable, together with his surety, to account to the ward to the extent he has acquired his money and estate, although the appointment may be void.
The infant was not instrumental in having the appointment made, or in seeking the aid of the appellee as surety on the bond, in order that the qualification might be made complete. The law pronounces the appointment void, but the intermed *248 dler who has the estate, and the surety who enabled him to get it, will be held to account.
The case of ■ Thomas v. Burrus, reported in 23 Mississippi, denies the right of recovery on the part of the infants, in a case like this, but we can not concur in the reasoning or the conclusion reached in that case. It is said “ that Walker had no power to act as guardian by virtue of his appointment, because another had been previously appointed and was still acting as guardian, and therefore any act done by Walker as guardian was absolutely null and void.” The question is asked in that case, “ Is Thomas, the surety, liable, then, for any non-performance by Walker of his duties as guardian ?” This must be answered in the negative, as was the response of the learned judge in that case. As Walker was not guardian, there was no statutory obligation to enforce. If we assume the premises upon which the opinion in Thomas v. Burrus is made to rest to be true, namely, that the appointment being void, the bond is also void, the conclusion must be the same, but the premises being false, an erroneous conclusion is the legitimate result.
Case after case might be cited where obligations have been enforced against parties when not assumed or entered into in accordance with the law, and the case of Thomas v. Burrus is in direct conflict with the ruling of ‘this court in a similar class of cases. In the case of Stevenson v. Miller, 2 Litt. 310, an injunction was granted by two justices of the peace in the absence of any right to exercise such a power, and it was said by that court, “ The injunction was procured by the appellees, and has had all the consequences of delay that a valid injunction could have had, and may have subjected the opposite party to great injury, and there is no reason why it (the injunction-bond) should not be held valid at common law.”
In the case of Edwards v. Morrison, reported in 5 Dana, 224, the county court appointed?the father guardian for his *249 children, and at that date when the bond was executed the county courts in this state had no jurisdiction to appoint a guardian when the father was living, yet it was held that the bond, although not valid as a statutory bond, was binding on the father and his surety for all the purposes of its execution, and in the still later case of McChord v. Fisher’s heirs, 13 B. Mon. 193, Jesse Fisher died in the county of Mason, the place of his residence, and Joshua Fisher was appointed administrator of his goods, etc., in the Fleming County Court. Soon after an administrator was appointed by the Mason County Court, the county where the decedent lived at his death. Fisher, who administered in Fleming, had given two bonds, one the original administrator’s bond, and the other a supplemental bond, executed on a rule requiring additional security. The distributees of the estate instituted an action against Fisher and his sureties to recover on their bonds. Several defenses were interposed in that case, and among them the one relied on here, viz. that the appointment of Fisher being void, no liability existed on the bonds.
The court adjudged that the county court had no power to make the appointment, and that neither the original or supplemental bonds were valid as statutory bonds, but further held the bonds good as common-law obligations. That although the Fleming County Court had no jurisdiction, and the appointment was. void, yet the lawful administrator, and not the distributees, in an appropriate action could recover on both the bonds of both principal and surety-, the value of the whole estate received by the pretended administrator before as well as after the bonds were executed. Although the attempt to quality in that case, as in this, was illegal and void, it was nevertheless the voluntary act of the party by which he acquired the estate of the infants, and the surety will be held responsible to the extent of the injury caused by this wrongful act, and will not be permitted to escape liability for no other rea *250 son than that his own act as well as that of his principal was illegal. The loss of nearly the entire patrimony of the infant appellants is to be attributed to this improper intermeddling with their estate, and there is no rule of law or equity that will deny them relief.
If, as argued by counsel for appellee, Cotton had Bennett elected judge for no other reason than to enable him to qualify as guardian, and he occupied the office with this wrongful intent, it but makes the case stronger for these infant appellants. Neither Cotton or his surety will be allowed to take advantage of their own wrong and to make a successful defense to this claim, for the reason that Cotton sought the appointment to enable him to get possession of this estate; and the fact that there was a lawful guardian at the time can not alter the rule or affect the liability of the appellee.
The extent of the liability of the surety is a question of more trouble than any other presented by the record. The money Cotton obtained from the mother prior to his appointment as guardian, whether evidenced by his note or otherwise, can not be said to have been obtained by him on account of the execution of the bond, although th'e doctrine announced in the case of McChord v. Fisher’s heirs, would lead to such a conclusion. The surety is made liable by reason of his enabling his principal to obtain possession of the infants’ estate, and such portions of it as he had already received and converted to his own use, the surety can not be made to account for. The note of the mother, executed to Cotton after his appointment and collected by him in the exchange of real estate, the surety must account for, as well as any bank-stock or choses in action delivered to Cotton and collected by him after the execution of the bond. The remedy is not given against Cotton as guardian, for the reason that he never held the office, and while he is individually liable for all the ward’s *251 estate that came into his hands, either before or after the date of his bond, still the surety can not be held liable for the value of the estate that Cotton had converted prior to the execution of the bond, because he was not instrumental in his getting possession of it, and is only liable to the extent of the injury that he (the surety) caused, and this is limited to what was received of the estate by reason of the execution of the bond.
No fraud has been practiced on the surety, nor any attempt on the part of the appellants or their mother, so far as appears from this record, to make a false exhibit of the accounts of Cotton with a view of enlarging his liability. All the responsibility created in the case arises from the act of Cotton and his surety, and we see no reason why these infant appellants should not recover. As to the mother, she now has no interest in this case and is asserting none, except through the administrator of her deceased child. This interest the administrator can prosecute.
The judgment below is reversed in behalf of all the appellants, except as to Terrell and wife, and as to them the appeal is dismissed without prejudice. They will pay their own costs in this court. The other appellants are entitled to a judgment for costs against the appellee, and it is so adjudged.