### Anderson's Committee v. Anderson's Administrator.
### Same v. Anderson, Committee.

(Decided November 13, 1914.)

### Appeal from Montgomery Circuit Court.

1.  Judgment—Must Be Signed.—It is indispensable to the validity of a judgment that it shall be entered in a book provided for that purpose, and signed after being so entered by the presiding judge or justice of the court.

2.  Judgment—To Be Signed by Successor.—Under section 977 of the Kentucky Statutes, a circuit judge has the right to sign any orders of court left unsigned by his predecessor in office.

3.  Courts of General Jurisdiction—Presumption.—Every presumption is in favor of the regularity of the proceedings of courts of general jurisdiction; their judgments cannot be collaterally attacked unless the want of jurisdiction appears upon the record.

4.  Insane Persons—Idiot—Inquest Every Five Years.—Under section 2167 of the Kentucky Statutes the court is required, every fifth year after the first inquest was held upon an idiot, to hold another inquest before any order shall be granted by the court for the maintenance of the idiot out of his own estate, or out of the State Treasury.

5.  Insane Persons—Idiot—Committee—Appointment of.—Section 2167 of the Kentucky Statutes authorizing the holding of quinquennial

inquests upon idiots does not authorize the court to appoint a new committee for the idiot upon the holding of such subsequent inquests; the committee originally appointed is to continue in office unless removed as provided by law.

6. Insane Persons—Committee—When Removable.—Where a committee of an idiot has been appointed, and has executed bond, he can not be removed except for cause.

7. Executors and Administrators—Who Entitled to be When Next of Kin is Incompetent to Act.—Under section 3896 of the Kentucky Statutes which authorizes the court having jurisdiction to grant administration of a decedent's estate to the relations of the decedent who apply for the same, preferring the surviving husband or wife, and then such others as are next entitled to administration, "the relations" or next of kin of the deceased are those persons who take the personal estate of the deceased under the statutes of distribution.

8. Executors and Administrators—Committee of Idiot Distributee Entitled to Appointment.—When the person who is next of kin and entitled to qualify as administrator under section 3896 of the Kentucky Statutes is an idiot having a committee, it is proper for the court to appoint the committee as administrator, he being the person in charge of the estate of the idiot who as next of kin, would be entitled to qualify as administrator, were he competent to act.

ROBERT H. WINN for appellants.

JOHN A. JUDY, LEWIS APPERSON and HAZELRIGG & HAZELRIGG for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

As these two appeals present, in a measure, the same state of facts, and have been heard together, they will be disposed of in one opinion.

In 1901, Lewis Anderson, the twenty-six year old son of David L. Anderson, was adjudged to be an idiot by the Montgomery Circuit Court, and with the consent of David L. Anderson, John G. Winn was appointed and qualified as the committee of Lewis Anderson. The necessity for the inquest and the appointment of the committee arose out of the fact that Lewis Anderson, at that time, received about $1,500.00 in the distribution of his mother's estate, in the case of McCue, &c. v. Gibson, &c. Lewis continued, however, to live with his father, David L. Anderson, who was a farmer, with a handsome estate.

On August 16, 1913, David L. Anderson, the father, died intestate, leaving Lewis, the idiot son, as his only child and heir at law, his wife having died many years before. Lewis inherited from his father a farm of 450 acres of land, worth about $50,000.00, and about

$25,000.00 in money, the estate thus aggregating about $75,000.00.

The September term, 1913, of the Montgomery Circuit Court was held by Judge A. J. Kirk, as special judge, the regular judge, Hon. Allie W. Young, being absent, or unable to hold court.

On August 18, 1913, George W. Anderson, the half-brother of David L. Anderson, deceased, appeared in the Montgomery County Court and asked to be appointed administrator of the estate of his half brother David L. Anderson. John G. Winn, who, as above stated, had been appointed committee of Lewis Anderson in 1901, claimed the right by virtue of his appointment as the committee of Lewis Anderson, to qualify as administrator of the estate of David L. Anderson, deceased, and moved the county court to so appoint him. Winn filed with his said motion a copy of the order of 1901 appointing him committee of Lewis Anderson; and, after hearing the argument of counsel upon the motions, the judge of the county court overruled Winn's motion for appointment, and sustained Anderson's motion; whereupon said George W. Anderson duly qualified as administrator of his half-brother.

Winn appealed to the circuit court, where the question was again tried. Objection was there made that the judgment entered in the original inquest of 1901, which found Lewis Anderson was an idiot, was invalid because the record of the inquest failed to show that process had been served upon Lewis Anderson, or that he was present in court. The circuit judge overruled this objection, and held the inquest of 1901 valid, in so far as the proceeding was concerned. It developed, however, upon the trial that the judgment of 1901, finding Lewis Anderson to be an idiot, had been entered in a separate book called the "Mental Inquest Book," which contained a printed form of judgment with blanks, which, when filled in would give the history of the idiot, as required by section 2158 of the Kentucky Statutes, and that said judgment had never been signed by Judge Cooper, the presiding judge of the court in 1901, or by any subsequent circuit judge. It had, however, been signed by the clerk of the court; and the orders of that date, and of a subsequent date approving Winn's bond as committee which he filed in the case of McCue, &c. v. Gibson, &c., had

been entered upon the regular order book of the court and signed by Judge Cooper.

The further proceedings are shown by the judgment of the circuit court, which, in part, reads as follows:

"Thereupon the cause came on to be heard upon its merits; whereupon the presiding judge announced from the bench his judgment that the appeal should be sustained; that George W. Anderson had no right to qualify as the administrator of David L. Anderson; and that John G. Winn, the committee of Lewis Anderson, had the right to so qualify, and that such was the judgment of the court.

"Thereupon came the said George W. Anderson before the entering of the said judgment and entered his motion of record herein, to dismiss the appeal, because the judgment appointing the said Winn as committee for the said Lewis Anderson was never signed by the then presiding judge of the Montgomery Circuit Court, to which motion the appellant objected, because the court had already announced its judgment and because the action was then submitted upon its merits; and in support thereof filed the affidavit of John A. Judy and the amended affidavit of R. J. Hunt.

"Thereupon came the appellant and moved the court and the Hon. A. J. Kirk as the presiding judge thereof, without waiving their objection to said motion, to dismiss the appeal, and sign said judgment *nunc pro tunc;* and in support of that motion filed the affidavit of H. R. French and Robert H. Winn and an exhibt with the affidavit of Robert H. Winn, to which motion George W. Anderson objects.

"Thereupon the court being advised (it being agreed of record by the parties that Henry Jones, who was sheriff of Montgomery County in April, 1901, is now dead), sustained said motion, and the appeal is now dismissed, to all of which the appellants and each of them object, and pray an appeal to the Court of Appeals, which is granted."

It appears from the affidavit of Hunt, the clerk of the court, filed upon the motion for a new trial, that after Judge Kirk had dismissed Winn's appeal on September 13, 1913, and after the entry of said judgment of dismissal, and its signing by the judge, Judge Kirk then signed the book wherein are recorded the judgments of

that court rendered in proceedings to inquire into the minds of idiots, which book is of the same series as, and immediately follows, the book in which is recorded the judgment of 1901 appointing Winn committee of Lewis Anderson; and that immediately after signing said record, Judge Kirk left Mt. Sterling, having, by order, adjourned said court until Monday, September 15, 1913. Judge Kirk did not return to hold the court; but a court was held on September 26, 1913, by Judge Young, the regular presiding judge, and on that day Winn made a motion to set aside Judge Kirk's judgment dismissing his appeal, but Judge Young overruled the motion.

The appeal by Winn as committee of Lewis Anderson, from Judge Kirk's judgment of September 13, 1913, refusing to appoint Winn as administrator of David L. Anderson, deceased, and appointing George W. Anderson as such administrator; and the refusal of Judge Kirk to sign the judgment of 1901, *nunc pro tunc*, appointing Winn committee for Lewis Anderson, constitute the questions presented by the first appeal now before us.

Under the statute, the term of the Montgomery Circuit Court began on Monday, the first day of September. At the adjourned session of the court, held on Friday, September 26th, as above recited, Judge Young impaneled a jury and again held an inquest upon Lewis Anderson, who was again found to be an idiot; whereupon Judge Young appointed the appellee George W. Anderson, the half-brother of David L. Anderson, as the committee for Lewis Anderson. George W. Anderson qualified by taking the oath and giving the bond required by law; and from Judge Young's judgment of September 26, 1913, appointing George W. Anderson committee of Lewis Anderson, Winn, the original committee, prosecutes the second appeal now before us.

The two appeals present the following principal and controlling questions: (1) Was the original judgment of 1901, appointing Winn, committee of Lewis Anderson, a valid judgment?; (2) If it was valid, was the second inquest upon Lewis Anderson held by Judge Young on September 28, 1913, authorized by law?; and (3) If the judgment of 1901 and the inquest of 1913 were valid, was Winn entitled to be appointed administrator of the estate of David L. Anderson, deceased?

1. It is well settled that it is indispensable to the validity of a judgment that it shall be entered in a book

provided for that purpose and signed after being so entered by the presiding judge or justice of the court. Commonwealth v. Chambers, 1. J. J. M., 108; Ewell v. Jackson, 129 Ky., 214; Robertson v. Donelson, 138 Ky., 152; Farris v. Matthews, 149 Ky., 457; Interstate Petroleum Co. v. Farris, 159 Ky., 823.

2. But in case the judge should, for any reason, fail to sign his judgment, section 977 of the Kentucky Statutes provides a remedy.

That section reads as follows:

"Upon the death of a circuit judge, or when from any cause the office is vacant, or when the judge is absent, his successor, no matter how chosen, may sign any orders of court left unsigned by his predecessor, the same as his predecessor might have done."

In speaking of this statute in Ewell v. Jackson, 129 Ky., 217, we said:

"It sometimes happens that after a judge has directed the entry of an order or judgment he is prevented by absence or death or other cause creating a vacancy in the office from signing the orders or judgments so entered. And when such a condition arises the orders made and entered by his direction may be signed by his successor. This section applies to special as well as regular judges. If a special judge, on account of death or absence from the court or retirement from the case, should fail to sign the orders in the case in which he presided, they may be signed by the special judge who succeeds him in the case, or by the regular judge of the court, unless he was disqualified from presiding in the case. And so, if the regular judge is prevented by death or absence from the court, or by a vacancy in the office, from signing the orders or judgments made and directed to be entered by him, his successor may sign them."

And, in Farris v. Matthews, 149 Ky., 458, we further referred to the statute, saying:

"This statute was enacted for the purpose of enabling a judge's successor, no matter how chosen, to sign orders which the presiding judge may for any reason have failed to sign. The statute should be liberally construed to carry out the purpose of the Legislature. There can be no doubt that it applies to a case like this. Whether Judge Faulkner, the presiding judge, failed to sign the orders because he was absent, or merely forgot

to do so, his successor in office may now sign the orders, and it is his duty to do so."

In view of the statute and these explicit rulings thereunder by this court, Judge Kirk should have signed the judgment of 1901, when requested to do so, as above stated; and his failure to sustain appellant's motion to that end, and to sign the judgment, was error.

Upon the return of the case the presiding judge of the court will sign the judgment of 1901.

3. But, it is said, the judgment, if signed, was void, because the record of the mental inquest of 1901 does not show that Lewis Anderson was summoned; and it was upon that ground that appellee moved the circuit court to dismiss the appeal. The court, however, overruled that motion; but, since the judgment, if invalid for any reason, would go to the root of the case, it is proper to pass upon that question, although the judgment of the trial court, in this respect, has not been appealed from.

The record of the inquest proceeding shows that the court ordered a writ of lunacy to issue; the appointment of counsel to represent Lewis Anderson; the selection of a jury composed of twelve persons, and their names; the filing of the affidavits of W. T. Simrall and Charles Duerson; and the verdict and judgment of the court appointing Winn the committee, and the fact that he gave bond which was accepted by the court.

The rule concerning a collateral attack upon a judgment is stated in 1 Black on Judgments, section 271, as follows:

"When a party seeks, in any collateral action, to impeach the judgment or decree of a court of superior jurisdiction, on the ground that he had no legal notice of the pendency of the action, it is necessary that his pleading should set forth what, if anything, is shown by the record in relation to the issue and service of process, because, unless the record does show that the court never acquired jurisdiction of him, it will be conclusively presumed that the jurisdiction did attach."

The foregoing rule has obtained in this jurisdiction to its fullest extent.

In McNew v. Martin, 22 Ky. L. R., 1275, 60 S. W., 412, this court said:

"Every presumption is in favor of the regularity of the proceedings of courts of general jurisdiction, even though the record is silent.

"Therefore, where the record in question is silent or where parts of it are lost, and not supplied by competent and satisfactory proof, the court, upon precedent and principle, must conclusively presume that all antecedent necessary steps to acquire jurisdiction were regularly and properly taken by the court. Otherwise, judgments would lose sanctity with age, and the natural infirmities of paper and records yielding to the corrosion of time, would yearly grow of less protecting value."

In James v. Edwards, 78 Ky., 6, Judge Cofer, speaking for the court, said:

"Under our system, it never has been required that evidence of the service of process should be preserved in any permanent form. Process is returned and placed among the loose papers of the case, and is very liable to be lost; and if every judgment is to be held void unless the summons can be produced, no matter how long the period during which it has stood unquestioned, the consequences would be of the most serious character. When a judgment has been rendered by a court of general jurisdiction, some consideration should be given to the fidelity and circumspection of the judge, and it ought, at any rate after a great lapse of time, to be presumed that the process has been lost, rather than that the court rendered judgment without process. Is it not much more probable, in such a case, that the process has been lost than that the court rendered a judgment against parties not properly before it?"

In Maysville & Big Sandy R. R. Co. v. Ball, 108 Ky., 261, the court further said:

"It is claimed the Nelson judgment is void, upon the ground that the defendant had not been served with process in the action in which the judgment was rendered. The attack on the judgment is not direct, but collateral. It is a well settled rule that domestic judgments rendered in a court of general jurisdiction can not be collaterally attacked unless the want of jurisdiction appears upon the record. Therefore no evidence is admissible except that which is furnished by the record of the action wherein the judgment was rendered. Of course, the rule is otherwise when a direct attack is made upon a judgment. The answer that the defendant was not served with process, and did not appear in the action, etc., is insufficient, because it also should have alleged that the record shows such to be the case."

To the same effect see Miller v. Farmers Bank of Kentucky, 25 Ky. L. R., 373, 75 S. W., 218; Northington v. Reid, 25 Ky. L. R., 354, 75 S. W., 206; Segal v. Reisert, 138 Ky., 117; Dennis v. Alves, 132 Ky., 345; Bamberger v. Green, 146 Ky., 258; Long v Hoffman, 149 Ky., 31.

In Porter v. Eastern Kentucky Asylum for the Insane, 121 Ky., 816, where the Asylum sought to recover for keeping a lunatic, and the lunatic defended on the ground that the inquest was void, the court said:

"While the inquest is void if held without notice to the lunatic and without his presence at the. trial, this fact is not shown by the inquest held here. The reasonable construction of the record is that the lunatic was in the custody of the court. The law requires his presence at the inquest, and the presumption is that the officer did his duty. If he was not present at the inquest this fact must be set up by plea."

Eversole v. Eastern Kentucky Asylum for the Insane, 30 Ky. L. R., 989, 100 S. W., 300, follows the Porter case, *supra.*

The concrete question relating to the cases of idiots and the presumption as to process upon them, came up for consideration in the recent case of Louisville Title Co. v. Darnell's Committee, 149 Ky., 312, where some apparent inconsistencies in preceding opinions were explained. In that case, Darnell had been found to be of unsound mind, and his committee had been appointed by a judgment of the county court. Subsequently, in a suit by the committee the real estate of the lunatic was sold, and the regularity of the proceedings in that case was attacked upon the alleged failure of the county court record to show certain jurisdictional facts.

The cases of Crown Real Estate Co. v. Rogers, Committee, 132 Ky., 790, and Stewart v. Taylor, 111 Ky., 247, relied upon by the appellee, were carefully examined; whereupon the court announced its purpose to adhere to its ruling in Porter v. Eastern Kentucky Asylum, 28 Ky. L. R., 796, 90 S. W., 263, as the better and safer rule. In the Porter case, *supra,* the court went so far as to hold in favor of the presumption that the officers of the county court did their duty, and issued and served the process.

The judgment attacked in the Darnell case was by a county court, a court inferior in jurisdiction to a circuit court; and it was there held that affirmative proof

might be introduced *aliunde* to show service of process. In the case at bar, however, the judgment attacked is the judgment of a circuit court, a court of general jurisdiction, with nothing upon the record to show affirmatively the want of jurisdiction; and, in cases of that character, the presumptions of regularity and of jurisdiction are conclusive. The judgment in such cases cannot be attacked by evidence *aliunde*.

There is a well recognized distinction between the presumption to be given the judgment of a court of limited or special jurisdiction, and the judgment of a court of general jurisdiction. The rule is elementary that in courts of limited or special jurisdiction, the jurisdictional facts must appear upon the record, or the judgment is a nullity; while in the case of courts of general jurisdiction, unless the invalidity of the judgment affirmatively appears from the record, the judgment will be conclusively presumed to be valid. Taylor v. Moore, 112 Ky., 330.

In Stewart v. Taylor, 111 Ky., 247, and in similar cases, wherein it was said that an inquest held without the presence of the person charged and without notice to him, was void, the court was referring to the condition of the record of a county court, or where it was affirmatively shown that the record disclosed the fact that the person on trial on the insanity charge was not present in court, or his personal presence dispensed with by the affidavits required by statute.

We are, therefore, of opinion that the presumption as to the validity of the judgment of 1901 in the mental inquest case must prevail, and that the circuit court correctly so ruled.

4.  The second inquisition held by Judge Young in 1913, may have been based upon the idea that the first inquistion of 1901 was void, either because the judgment had not been signed, or for irregularity in the proceedings. In either event, the second inquisition held in 1913 would have been justified as an original inquisition. We are not advisied by anything in the record as to the ground upon which the ruling was rested.

Section 2149 of the Kentucky Statutes, relating to the appointment of committees for lunatics, reads as follows:

"The several circuit and county courts have power and jurisdiction within their respective counties of the

care and custody of the persons and estates of all idiots, lunatics, those who, from confirmed bodily infirmity, are unable to make known to others by speech, sign or otherwise their thoughts or desires, and, by reason thereof, incompetent to manage their estates, and those whose minds, on account of any infirmity or weight of age, have become so imbecile or unsound as to render them incompetent to manage their estates; and also over their committees, with power to appoint, suspend and remove their committees, and to require the committee to make settlements upon the same terms and in the same manner as is given over the persons, estates, and guardians of infants; and a committee shall give bond, with good surety, in the same manner as a guardian, upon which bond actions may be maintained by any person aggrieved by a breach thereof.''

Section 2167 of the Kentucky Statutes further provides:

''Every fifth year after the first inquest, before any order shall be granted by the court for the maintenance of an idiot out of his own estate, or out of the State Treasury, the idiot, in like manner, shall be brought into court, or his presence dispensed with, for the reasons herein allowed; and the court shall cause the jury to be impaneled, who shall be sworn as provided in this article; and also to inquire, and true report to make from the evidence, whether the person whom they have in charge has before been found, by the verdict of a jury and judgment of a court, an idiot, and whether and what change, if any, has taken place in his mind, physical condition, and estate, since the original inquest.''

We have hereinbefore decided that the mental inquest of 1901 was valid, and that the judgment therein is to be signed by the presiding judge of the court. We have, therefore, left for decision under this head of the case, the further question: Was the second inquest of 1913 authorized by section 2167 of the Kentucky Statutes, supra; and, if it was so authorized, what was the effect of that inquest?

It will be noticed that the statute is peremptory in its terms, and requires a new inquest every fifth year after the first inquest, before any order shall be granted by the court for the maintenance of an idiot out of his own estate, or out of the State Treasury. Until the time of the death of Lewis Anderson's father, who had sup-

ported him, there was no necessity for an allowance to be made out of Lewis' estate for his maintenance, and, consequently, there was no necessity for a new inquest. But, upon the death of his father, Lewis Anderson having become dependent upon his own estate for his maintenance, the statute became operative.

It has been argued that section 2167, *supra,* applies only to pauper idiots, and has no application to a case of the kind before us, where no maintenance is asked or expected out of the State Treasury. The language of the statute, however, is plain and broad; it applies to all idiots, and must be complied with before any order be granted for the maintenance of the idiot either out of his own estate or out of the State Treasury.

The inquest of 1913 was, therefore, authorized under section 2167, *supra,* as a quinquennial inquest, the inquest of 1901 being treated as the first and valid inquest.

5. But this further question arises: Was the court authorized, after having held the inquest of 1913, to appoint George W. Anderson the committee of Lewis Anderson, the idiot. No attempt was made to remove Winn from his position as committee of Lewis Anderson, and no order was made in that connection. No ground of removal or suspension was suggested.

Referring to section 2149 of the statute above quoted, it will be observed that the court is given "power to appoint, suspend and remove their committees, and to require the committee to make settlements upon the same terms and in the same manner as is given over the persons, estates, and guardians of infants."

Section 2015 of the Kentucky Statutes, relating to the appointment of guardians, reads, in part, as follows:

"The several county courts shall have jurisdiction for the appointment and removal of guardians to minors, and the settlement of their accounts."

Sections 2024, 2026 and 2039 of the Kentucky Statutes, relating to the removal of guardians, provide as follows:

"2024. When a guardian shall become insane, move out of the State, become incapable of discharging the duties of his trust, or evidently unsuited therefor, the court, being satisfied that either of the causes aforenamed exists, shall remove him; or when it appears proper, the court may permit him to resign his trust, if he first settles his accounts and delivers over the estate

as by the court directed; and in either case, or when from any cause there is a vacancy in the office of guardian, may appoint a guardian."

"2026. The court may also remove a guardian for failing to make a settlement of his accounts as required by law, or as may be required by the court, or for failing to give additional surety when required."

"2039. The several courts of chancery shall have power to hear and determine all matters between guardian and ward, require settlements of guardianship accounts, remove a guardian for neglect or breach of trust, control the custody and tuition of the ward and the management and preservation of his estate, and direct the sale of any of his real estate, if necessary to the proper maintenance and education of the ward, or for the payment of his debts."

Section 2167, *supra*, does not provide for the appointment of a new committee; that matter is controlled by section 2149 of the Statutes above quoted.

6. The question as to the right of the court to remove a guardian under the preceding statutes, has often been before the court; and since the statute applies the law of guardians to committees, it becomes necessary to consider under what circumstances the court will remove a guardian.

In Leavel v. Bettis, 3 Bush, 74, the county court, without any order removing a prior guardian, appointed a new guardian for a child, upon the assumption that the marriage of the prior guardian had incapacitated her from further acting. The old guardian obtained an order cancelling the appointment of the new guardian, and the latter appealed. In the course of the opinion, this court said:

"The court appointing appellant had no jurisdiction in the *ex parte* movement he made without notice; and if there had been notice, his appointment was void because there was no vacancy for him to fill."

Substantially the same ruling was made in Cotton v. Wolf, 14 Bush, 238.

In Estridge v. Estridge, 25 Ky. L. R., 1076, 76 S. W., 1101, it was again held that a court was without power to appoint a guardian without having first removed the former guardian.

And, in Dunlap v. Kennedy, 10 Bush, 539, the court said:

"Neither a guardian nor an administrator is the agent, officer, or assistant of the county court.

"They are trustees, and have such interests in the execution of their trusts as entitle them to the protection of the law  The county courts have supervisory power over them, but their duties are prescribed by law and not by the county courts, and so long as they observe the requisitions of the law and faithfully execute their trusts they can not be compelled to surrender them."

In Phillips v. Williams, 118 Ky., 757, there was litigation over certain rentals in which an infant had an interest, and the court, upon the filing of affidavits stating that Phillips was not a proper person to act as guardian for the infant, summarily removed him.  Upon Phillips' appeal, the court said:

"Section 2039 of the Kentucky Statutes of 1903, which authorizes courts of chancery to remove guardians for neglect or breach of trust, does not give authority to the court to make the removal on ex parte affidavits, nor without proceedings instituted against the guardian for that purpose.  He is entitled to his day in court. He should be advised of the charge against him, and be given an opportunity to defend himself.  That part of the order removing him is without any effect."

To the same effect see Gill v. Riley, 28 Ky. L. R., 639, 90 S. W., 2; and Clay v. Clay, 28 Ky. L. R., 398, 89 S. W., 500.

The law being thus well settled, that when a guardian has been appointed and has executed bond, he can not be removed except for cause, the same rule must, under the statute, be applied to committees.  It results, therefore, that as Winn was the regularly appointed committee and has not been removed, and there cannot be two committees for the same service, the appointment of George W. Anderson as committee did not have the effect to remove Winn, or to supersede him in his office of committee. While Judge Young had authority to hold the inquest, his appointment of George W. Anderson as committee was, under the circumstances of this case, unauthorized, and of no effect.  Cotton v. Wolf, 14 Bush, 238.

7.  Did Winn have the right to administer upon the estate of David L. Anderson, deceased?

Section 3896 of the Kentucky Statutes establishes the precedence in right of administration, as follows:

"The court having jurisdiction shall grant administration to the relations of the deceased who apply for the same, preferring the surviving husband or wife, and then such others as are next entitled to distribution, or one or more of them who the court shall judge will best manage the estate."

While the statute gives the right of administration to "the relations of the deceased," it qualifies the kinship, when it passes the surviving husband or wife, by confining it to such other relations as are next entitled to distribution. If the party applying be not a distributee, he does not come within the terms of the statute, although he may be closely related to the deceased. This construction was given to the statute in Hilton v. Hilton's Admr., 33 Ky. L. R., 276, 109 S. W., 905.

In that case, the court at the instance of the decedent's father and mother, who were his sole distributees, appointed Hamm, the district constable, who was related in no way to the decedent, as administrator. Decedent's sister, Hattie Turner, who had no distributable right, applied to the court to remove Hamm and appoint her in his place.

In denying her the appointment, the court said:

"The proof shows, without question, that the father and mother are not qualified to act as administrator. But, as they were the sole distributees of the estate, it was proper for the county court, on their motion, to appoint a suitable person as administrator. It is not controverted that Hamm is a suitable person. While Hattie Turner was a sister of the deceased, she had no interest in his estate, and the county court was not required to wait until the next term before making an appointment when both of the sole distributees requested the appointment of Hamm. The purpose of the statute is that the surviving husband or wife shall be preferred and then such other relations as are next entitled to distribution. Here there was no wife, and Hattie Turner, who was not entitled to distribution in any part of the estate, had no control of the matter. * * * The statute does not contemplate that persons who are related by blood, but have no interest in the estate, shall determine who shall be appointed as administrator. We, therefore, conclude that

the court properly appointed Hamm upon the showing made at the time.''

A similar ruling was made in Re Estate of John Weaver, 140 Ia., 615, 22 L. R. A. (N. S.), 1161, 17 Am. & Eng. Ann. Cas., 947.

The Iowa Code provided that administration should be granted, (1) to the husband or wife of the deceased; (2) to his next of kin; (3) to his creditors; (4) to any other person the court may select. The decedent left surviving him as his sole distributee, a son who was a citizen of Oklahoma, and therefore incompetent to qualify in Iowa. But, at the son's instance, a citizen of Iowa, a stranger in blood to the decedent, was appointed and qualified as the decedent's administrator. Within due time, a brother of the decedent, a resident of Iowa, applied for letters of administration, and the trial court sustained his application. Upon appeal, however, the Iowa Supreme Court reversed that ruling, saying:

''The fallacy which has entered into the argument supporting this proceeding is the assumption that a brother of a decedent is necessarily a 'next of kin.' In the primary meaning of this term the next of kin of a decedent are the persons nearest in degree of blood surviving him. 16 Am. & Eng. Enc. Law, p. 703. No relative can be said to be 'nearest' in degree of blood if someone else be 'nearer.' If a decedent leave neither parent nor lineal descendant surviving him, then surviving brothers and sisters would be nearest in blood, and 'next of kin.' In its practical use in public statutes the term 'next of kin' has come to mean ordinarily those persons who take the personal estate of the deceased under the statutes of distribution. Inasmuch as the statutes of distribution vary in different states, the meaning of this term is subject to the same variation. Whether we adopt the primary meaning of the term or its more practical meaning, as derived from its use in the statute, there can be no question under the law of this State, but that J. W. Weaver was the decedent's only heir at law, and his only next of kin. The brother, appellee herein, was therefore not a next of kin. The statute quoted confers upon him no right or privilege whatever with reference to the estate of the decedent. The fair inference from the record is that there were no known creditors. The son was therefore the only person interested in the estate to any extent. The first action

of the court, in appointing Lamb, upon the application of the son, was eminently proper. In the absence of some showing that the appointment was improper, or that a change was required by the interests of the estate as a whole, or by the interest or right of some beneficiary of the estate, such appointment should not have been set aside. In view of the fact that J. W. Weaver was the only person who had any interest in the estate, and that Frank Weaver was, in legal effect, a stranger to the estate, without interest therein, and without statutory right to administer, his petition should have been dismissed at his cost.''

8. Lewis Anderson being entitled under the statute to qualify as the administrator of his father's estate, but being incompetent to do so, did the appellant Winn, by right of his committee relationship, have that right?

While we have no direct authority upon the question in this State, the decisions of the courts of other states seem to be reasonably uniform, and to the effect that Winn has the right to administer.

In Mowry v. Latham (1891), 17 R. I., 480, 23 Atl., 13, the Rhode Island Statute gave the right to administer to the next of kin entitled to distribution. Van Buren Mowry died intestate, leaving as his sole heir at law a brother, Edwin H. Mowry, who had been adjudged *non compos,* and M. L. D. Mowry had been appointed his guardian, or committee as he would have been called under our statute. The probate court appointed Latham administrator of the decedent, whereupon the guardian of the incompetent son appealed.

In sustaining the appeal, the court said:

''We do not think, however, that the appellee was entitled to the appointment. In Johnson v. Johnson, 15 R. I., 109, it is shown that the law commits the administration of the estate of an intestate to the persons who are entitled to the residue of the estate, judging that such persons, because of their interest, will be likely to administer the estate most advantageously for all concerned. Under our statute the next of kin is entitled to the residue of the estate after payment of debts, funeral expenses, and expenses of administration. The next of kin of the deceased is Edwin H. Mowry, his brother. If competent, he would be entitled to the administration. He is, however, *non compos mentis,* and incapable of performing its duties. The appellant has been appointed guardian of

his person and estate. As such, it is his duty to manage and care for the property of his ward for the benefit of the ward. We are, therefore, of the opinion, that as Edwin H. Mowry, if competent, would be entitled to the administration, his representative appointed by law to guard his interests is entitled to the administration in preference to a person who would have been of the next of kin had Edwin H. Mowry died before his brother, and *a fortiori,* in preference to a stranger nominated by such person.''

A similar ruling was made in the case of In Re Stewart's Estate (1896), 18 Mont., 595, 46 Pac., 806, where Stewart died intestate, leaving a wife sixteen years of age, and one minor child, surviving him. The widow asked the court to appoint Keith administrator, but the court overruled Keith's application and appointed Brooks, the public administrator.

In reversing the judgment upon Keith's appeal, the Supreme Court of Montana said:

''The respondent's contention must be that, where the widow is a minor, she is necessarily incompetent to serve herself, and that inasmuch as she is incompetent to serve herself she is also incompetent to name some competent person whom she may request to have appointed. But we do not think this contention can be sustained. The first right to administer is granted to the surviving husband or wife; yet it might often happen that such survivor would be by non-residence, or other disqualification, incompetent to serve. But the statute, as if made especially to cover such a contingency, gives to the surviving husband or wife the right to name some competent person who can serve. This right of the surviving husband or wife to nominate is not made dependent upon the competency to serve of the person occupying such relationship. It is a right of nomination given by virtue of the fact that the person who exercises it stands in the relationship of surviving husband or wife; it is independent of the competency of such husband or wife himself or herself to serve.''

In Woodruff v. Snoover (N. J., 1900), 45 Atl., 980, Snoover, the guardian of the infant children of an intestate, was appointed administrator of their father, and Woodruff, a kinsman of the deceased father, appealed. In support of Woodruff's claim to qualify as administrator,

it was argued that he was of kin to the decedent, while Snoover was not.

The Vice Chancellor of the Prerogative Court denied Woodruff's claim to qualify, saying:

"The appellants, however, are not next of kin of the intestate, who died a widower. His two infant children are his next of kin. They were entitled to administer, had not their infancy prevented their appointment. Now, when the next of kin are incapable of administering, upon the theory upon which letters of administration are granted, such letters would go to some one interested for the next of kin. It was upon the theory that the next of kin would take the residue that the statute confers the right upon him or them. For that reason, when there is a will, and no executor, administration is granted, not to the next of kin, but to the residuary legatee. If the residuary legatee died, administration went to his personal representative, because such personal representative then had a superior interest in having an economical administration, so as to preserve as much as possible of the estate of the intestate for the estate of the residuary legatee. Donahay v. Hall, 45 N. J. Eq., 720, 18 Atl., 163; Booraem's case, 55 N. J. Eq., 759-762, 37 Atl., 727. For this reason, where the next of kin is an infant, and an administrator is appointed during his minority, it is proper to appoint the person who has charge of the estate of the infant, viz.: his guardian. Such has been the practice. 1 Williams' Exrs., marg. p. 417; 1 Woerner, Admr., 404. Nor did it matter that the present respondents were appointed administrators during the minority of the next of kin; for, had they been appointed general administrators, the same rule would have controlled. They, as guardians of the estate of the next of kin, would have had a superior interest, as such guardians, in the residuary estate of the intestate."

In the Estate of Turner (1904), 143 Cal., 438, 77 Pac., 144, the California Statute provided, that if any person entitled to administration be a minor, or an incompetent person, letters must be granted to his or her guardian, or any other person entitled to letters of administration, . in the discretion of the court. In that case the court upheld the appointment of a guardian as administrator to the exclusion of certain brothers of a minor having the same distributable right, notwithstanding the court had

the right, under the statute, to exercise a discretion in granting administration to some other person.

See also In Re McLaughlin's Estate (Cal.), 37 Pac., 410, and Clough v. Verello (Cal.), 48 Pac., 330.

In Boyd v. Cloud (1905), 5 Pennewill (Del.), 479, 62 Atl., 294, Joshua Boyd, the decedent, left surviving him as his only heir at law, a brother, John L. Boyd, who had been adjudged a lunatic. His son, William Boyd, had been appointed his trustee, and by virtue of that office, William Boyd was appointed the administrator of the decedent. A contest having arisen over the appointment, the court summarily formulated its decision, as follows:

"The matter is decided on the one point, viz.: whether the trustee of an insane person is entitled to administer on an estate to which such insane person is entitled to the residue, and therefore entitled under the statute to administer; the court held that such trustee is entitled, the same as the insane person would be if capable."

One of the best reasoned opinions we have found upon this subject is Kinnick v. Coy (1906), 40 Ind. App., 139, 81 N. E., 107. In that case, Weeks, the decedent, left surviving him two daughters who were non-residents of Indiana, and an infant son who was a resident of Indiana. A contest arose over the right of the guardian of the infant resident son on the one hand, and that of the non-resident daughters on the other, to administer upon their father's estate. The Indiana Statute provides that administration must be granted to the widow, to the next of kin, to the largest creditor, if he be a resident of the State, in the order named as to precedence.

In disposing of the case, the court said:

"The only question we feel it necessary to determine in this case is whether the appellant is entitled to administer upon this estate as a matter of right, on account of his relationship as guardian of the minor heir. If he is so entitled, then the fact that he is a non-resident of the county would not deprive him of that right. If he is entitled, as the representative of his ward, to administer, he would stand in precisely the same position as his ward with reference to the right to administer, and this would not require that he should be a resident of the county. The statute of this State does not expressly declare that a guardian shall be entitled to administer

upon the estate of a decedent in right of his ward. He is, however, recognized as the representative of his ward. It is his duty to care for the ward's estate, and to look after the ward's interest in every matter pertaining to his financial interest. The statute fixing the order of right to administer upon the estate of a decedent is founded upon the proposition that the heirs and the creditors are interested in the estate, and that it is in one sense their property that is to be administered upon. The heirs, after the debts are paid, own the property of the intestate, it is theirs. The creditors own the property of the estate to the extent that it shall be used to pay the debts, and this is the reason of the statute's giving to those persons a preference in the administration. It is the rule at common law that the trustee or guardian of an infant or *non compos,* who would otherwise be entitled to administer upon an estate, was entitled to administer in the right of his ward or *cestui que trust,* and in every case in which the question has arisen it is uniformly held that the guardian of an infant, who, if of age, would be entitled to administer upon an estate, is entitled as of right to such administration. The question has never heretofore arisen in this State, but we feel impelled to hold, in unison with the current of authorities upon the question, that in this State, the guardian of an infant who, if of age, would be entitled to administer, is in right of his ward entitled to letters of administration in preference to strangers; and that he stands, so far as the question of his right to administer upon the estate is concerned, in the shoes of his ward, and to that extent represents his ward. This holding is in line with the following authorities: Mowry v. Latham (1892), 17 R. I., 480, 23 Atl., 13; Boyd v. Cloud (1905), 5 Pennewill (Del.), 479, 62 Atl., 294; Woodruff v. Snoover (1900), (N.J.), 45 Atl., 980; Langan v. Bowman (1849), 20 Miss., 715.''

Mattox v. Embry (1908), 131 Ga., 283, followed Myers v. Cann, 95 Ga., 383, in upholding the appointment of an administrator selected by some of the adult children and the guardian of a minor child of a decedent as against a kinsman not entitled to distribution, who was selected by the other heirs.

That Lewis Anderson, if competent, had the right to qualify as administrator of his father's estate, cannot be doubted. Buckner's Admr. v. Buckner, 120 Ky., 596;

Watkins v. Watkins' Admr., 136 Ky., 266. But as Lewis Anderson was mentally incompetent to act as administrator we are of opinion, in view of the abundant authority above cited, which seems to us to be based upon sound reasoning, his committee upon whom was imposed the duty of preserving the estate, was entitled to qualify in the place of his incompetent principal. Lewis Anderson is the next of kin, and is the only person interested in the distribution of his father's estate; his uncle, George W. Anderson, not being entitled to participate in the distribution, is not the next of kin within the meaning of the statute. In the contemplation of the statute, he is a stranger, and the possibility or probability that, as the uncle of the idiot, Lewis Anderson, he may inherit a part, or even all of his estate, does not make him a distributee of the estate of David L. Anderson, or affect the case in any way.

The judgment in each appeal is reversed for further proceedings consistent with this opinion.