## Haswell v. Wedding.

Feb. 21, 1939.

Loraine Mix, Judge.

JOHN P. HASWELL for appellant.

R. F. PEAK and S. J. STALLINGS for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Appellant, John P. Haswell, was appointed administrator of the estate of G. G. Wedding, deceased, by the county judge of Oldham county, October 21, 1935. On December 5, 1935, he was appointed committee for Robert R. Wedding, an incompetent. Both appointments were made at the request of the competent heirs of G. G. Wedding. Robert R. Wedding was found to be a person of unsound mind and a lunatic by a jury in the Jefferson Circuit Court, Criminal Branch, June 16, 1916. He was so adjudged and was committed to the Central State Hospital at Lakeland, Kentucky. He is still confined to that institution, or was at the commencement of this suit. The only heirs surviving G. G. Wedding were his brothers, Robert R. Wedding, C. C.

Wedding and W. W. Wedding, and his sister, Mrs. Daisy Edick, all adults.

In March, 1938, a motion was filed by an attorney for the Department of Welfare of the Commonwealth in the Jefferson Circuit Court, Criminal Branch, asking that a committee be appointed by that Court for Robert R. Wedding. The motion set out that Robert R. Wedding had been adjudged to be insane on June 16, 1916, and was committed to the Central State Hospital on that date; that he had inherited a one-fourth interest in the estate of G. G. Wedding, which estate had been valued at $196,000; that John P. Haswell had been appointed a committee for Robert R. Wedding by the county judge of Oldham county, but that the record of the Oldham county court did not disclose any fact giving it a right to appoint a committee for Robert R. Wedding; that John P. Haswell, as administrator of the estate of G. G. Wedding, was not a fit or proper person to be appointed committee for Robert R. Wedding because of conflicting interests of the two offices; and that the motion was being made because Robert R. Wedding was indebted to the Central State Hospital in the sum of $6,944.24 for maintenance covering a period from June 16, 1916 to January 1, 1938.

On March 16, 1938, the judge of the Criminal Branch of the Jefferson Circuit Court appointed John P. Haswell and R. F. Peak as a joint committee for Robert R. Wedding and they executed bond on March 29th. It was also adjudged that the appointment of John P. Haswell by the Oldham county judge was void, and that the Department of Welfare had a claim against the estate of G. G. Wedding for board and maintenance of Robert R. Wedding. Judge Peak seems to have become dissatisfied with the joint committeeship, and on April 22, 1938, he filed in the Criminal Branch of the Jefferson Circuit Court the first of several motions relative to Judge Haswell's actions as a member of the committee. As an outcome of Judge Peak's actions the trial judge removed Judge Haswell from the joint committee on August 8, 1938, thereby leaving Judge Peak as the committee.

The trial judge set out his reasons for removing Judge Haswell in an opinion in which he reviewed the whole matter. In this opinion the trial judge stated that it was apparent from the record that "Judge Haswell

was unable to deliver any personal property, the possesssion of which was to be shared jointly by his co-committee, Judge Peak." The following quotation from the opinion sets forth in the main the reasons assigned by the trial judge for removing Judge Haswell as a member of Robert R. Wedding's committee:

"G. G. Wedding died intestate, leaving four heirs, all of whom are adults and all of them being normal sane persons, except Robert R. Wedding, who has been confined in Lakeland Asylum since 1916 and is still an inmate there. An indebtedness of $16,000 existed on real estate owned by G. G. Wedding in Clarke County at the time of his death and this indebtedness, which is susceptible of being paid on installments, has been reduced by the sum of only $2,000, leaving a balance of $14,000 apparently still owing. I believe that it is the uniformly recognized rule in the State of Kentucky that an administrator should in every instance first pay all indebtedness against the estate before any money or property can be delivered into the possession and ownership of any heir. There is not the slightest suggestion that occurs to the Court's mind that anything corrupt has been done by Judge Haswell, acting as administrator, but upon his own testimony it is quite apparent that the interests of the incompetent person have not been greatly considered. The estate of the incompetent, after paying the claim of the asylum for his board whatever that is adjudged to be, should be conserved for his future care and it is to his interest as well as that of the State of Kentucky that his portion of his deceased brother's estate be marshalled and ready for his use and benefit. J. P. Haswell, acting as administrator made a partial settlement which is shown by this record and likewise testimony introduced which reveals the fact that he as such administrator has paid to C. C. Wedding, a brother of the deceased, the sum of $4,600.00, at which time the said C. C. Wedding was indebted to the deceased's estate in the sum of $5,300.00. That W. W. Wedding, another brother, owed the estate $1,500.00 and the administrator has paid him $7,000, and that·a sister of the deceased has been paid $2,600.00. During this period of three years the record shows a rather large sum has thus been paid out to the competent heirs and during the entire period only the sum of

$17.89 has been expended on the incompetent in question.

"From the date of the death of G. G. Wedding, C. C. Wedding has occupied the farm and during that period of time various sums aggregating $13,000 have been paid by the administrator for the maintenance of the farm. Although it is claimed that the farm is in better condition than it was three years ago, it is really difficult to see what right the administrator has to expend money for the maintenance of real estate. The Court realizes that the duties performed by Judge Haswell have been arduous and disagreeable and that he has probably received no compensation for his services. The Court realizes that Judge Haswell has been actuated by no motive except that of honesty and probity, but we believe that he has been influenced by his friendship for the competent heirs of G. G. Wedding to manage the estate largely for their interests and not for the interests of the incompetent.

"It is now incumbent upon the Court to excuse either one or the other of the committee, and inasmuch as the record reveals and the Court is certain that Judge Peak as committee if allowed to remain as such will file proceedings in behalf of the incompetent against John P. Haswell, administrator, it is quite apparent that Judge Haswell feels that no such action should be taken and it will place him in an anomalous situation to expect him as committee or joint committee of the incompetent to file suit against himself as administrator."

It can be seen from the foregoing that Judge Peak and Judge Haswell had only been serving as the joint committee for Robert R. Wedding a short time before Judge Peak began his efforts to have Judge Haswell removed as a member of the committee. Furthermore, it is apparent from the quotation from the opinion of the trial judge, supra, as well as from the record, that the actions of Judge Haswell as administrator of the estate of G. G. Wedding bore the brunt of the criticism and not his actions as a member of the joint committee appointed for Robert R. Wedding on March 16, 1938. While Judge Haswell's stewardship of the estate of G. G. Wedding is not before us we are constrained to say, in view of the references made to his actions as administrator by the trial court, that the record shows

that he has accounted for all funds that have come into his hands and that it is quite probable that the estate is in better condition now than when he took charge of it. But granting for the sake of argument that he has advanced sums to some of the heirs when he should not have done so, his bond is adequate to cover such sums. There has been little or no occasion to advance funds to Robert R. Wedding except for his keep in Central State Hospital and this in all probability will be taken care of in the future since the question has already been raised. Whatever advances have been made for the upkeep of the farm and whatever improvements have been made thereon will serve to the benefit of Robert R. Wedding the same as to the other heirs.

The duties of a guardian or committee are defined by law and so long as one holding such an office obeys the law there can be no cause for removing him. It is true that the circuit and county courts have power under Section 2149 of the Statutes to appoint, suspend and remove committees for incompetents within their respective counties, but this can only be done for cause. Anderson's Committee v. Anderson's Adm'r, 161 Ky. 18, 170 S. W. 213, L. R. A. 1915C, 581. Nor do we find any basis for holding that there is any fundamental conflict of interest between the office of administrator of an estate and the office of committee of an incompetent heir thereof. An examination of the record reveals little, if any, basis for condemning the acts of Judge Haswell as a member of Robert R. Wedding's Committee after he and Judge Peak were appointed as the joint committee on March 16, 1938. On the contrary, the record shows that he manifested a cooperative attitude toward Judge Peak. Furthermore, the bond executed by Judge Haswell and Judge Peak would cover any wrongdoing on the part of either or both of them as members of the committee.

While the circuit and county courts are given wide discretion in the management of the estates of incompetents under Section 2149 of the Statutes, and while we are always reluctant to overrule the trial court in passing upon such matters, we are forced to the conclusion that the record does not support the removal of John P. Haswell as a member of the joint committee of the incompetent, Robert R. Wedding. Such a removal would be warranted only for good cause and we fail to find that Judge Haswell's actions as a member of the com-

734

mittee after his appointment on March 16, 1938, were such as to warrant the trial judge in removing him from the office. As we pointed out, Judge Haswell's bond as administrator of the estate of G. G. Wedding is adequate to cover any wrongdoing on his part in that office, if there be any.

Judgment reversed with directions for proceedings consistent with this opinion.